**In re CENDANT CORPORATION PRIDES LITIGATION.**

**Civ. No. 98–2819 WHW.**

United States District Court, D. New Jersey.

June 16, 1999.

Roger W. Kirby, Kirby McInerney & Squire LLP, New York City, Lead Counsel for the Prides Class.

Carl Greenberg, Michael Rosenbaum, Budd Larner Gross Rosenbaum Greenberg & Sade, P.C., Short Hills, NJ, Samuel Kadet, Skadden, Aarps, Slate Meagher & Flom LLP, New York City, for Cendant Corporation and Cendant Capital I.

James N. Benedict, David Meister, Rogers & Wells LLP, New York City, for Merrill Lynch & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Chase Securities Inc.

Howard Sirota, Sirota & Sirota, LLP, New York City, John J. Barry, Tompkins, Mcguire, Wachenfeld & Barry, LLP, Newark, NJ, for the Joanne A. Aboff Family Trust U/A dated 2/11/92.

## AMENDED OPINION

WALLS, District Judge.

This matter is before the Court on the application of Roger W. Kirby of Kirby, McInerney & Squire, LLP, Lead Counsel for the Prides class ("Lead Counsel"), for approval of the proposed settlement with Cendant Corp. and for attorneys' fees and reimbursement of expenses. Howard B. Sirota, counsel for the Joanne A. Aboff Family Trust U/A dated 2/11/92 ("Aboff Family Trust"), has objected to Lead Counsel's fee request on the ground that it is excessive. Previously, counsel for the Aboff Family Trust had objected to the settlement on the basis of a confidential supplemental agreement incorporated in the settlement, but this objection has been withdrawn. On May 18, 1999, the Court heard oral argument of these matters. The Court also raised, *sua sponte*, the application of counsel for the Aboff Family Trust for attorneys' fees. The settlement is approved subject to the modifications to attorneys' fees described herein. The application of counsel for the Aboff Family Trust for attorneys' fees is denied.

## BACKGROUND

Cendant was formed on December 17, 1997, through the merger of CUC International, Inc. ("CUC") and HFS, Inc. ("HFS"). In February, 1998, Cendant and its wholly owned subsidiary, Cendant Capital I, issued a derivative-type convertible security known as Cendant FELINE PRIDES ("Prides") in an initial public offering ("Prides Offering") pursuant to a registration statement, a prospectus, and a prospectus supplement filed with the Securities Exchange Commission ("SEC"). The registration statement and the prospectus contained Cendant's audited and consolidated statements of income for the three years ended December 31, 1996 and the Company's unaudited financial results for 1997. The Prides Offering, which involved the sale of approximately 29,900,000 Prides valued at $1.5 billion, closed on March 2, 1998. Defendants Merrill Lynch & Co., Merrill Lynch, Pierce, Fenner & Smith Inc. (collectively "Merrill Lynch"), and Chase Securities Inc. ("Chase") were the underwriters.

The registration statement and the prospectus offered two types of Prides: Income Prides and Growth Prides. Each of the Income Prides consists of a unit comprised of a Purchase Contract under which the holder will purchase from Cendant on February 16, 2001 a specified number of newly issued shares of Cendant common stock for $50 (the "Stated Amount") in cash. Cendant will pay the holders of Income Prides "Contract Adjustment Payments" at the rate of 5% of the Stated Amount per year, an interest in Trust Preferred Securities paying 6.45% of the Stated Amount per year, and $50 at maturity. Each of the Growth Prides consists of a unit comprised of a Purchase Contract under which the holder will purchase from Cendant on February 16, 2001 a specified number of newly issued shares of Cendant common stock for the Stated Amount in cash. Cendant will pay the holders of Growth Prides "Contract Adjustment Payments" at the rate of 5% of the Stated Amount per year and a 1/20th undivided beneficial interest in a treasury security having a principal amount of $1000 and maturing in 2001.

On April 15, 1998, Cendant announced that it had discovered accounting irregularities in a former CUC business unit and that Cendant's financial statements for 1997, and possibly earlier years, would be restated. Thereafter, a number of purchasers of Prides as well as other Cendant securities filed class actions against Cendant and other defendants including Merrill Lynch. On May 29, 1998, this Court consolidated all of the actions then pending against Cendant under *In re Cendant Corporation Litigation*. On June 15, 1998, another class action was brought on behalf of the purchasers of Prides, *Welch & Forbes, Inc. v. Cendant Corporation*, et al. Civ. No. 98–2819(WHW), which was also consolidated with the 98–1664 action. In its Opinion and Order of September 8, 1998, this Court appointed Welch & Forbes lead plaintiff for all claims based on purchases of Prides in the *In re Cendant Corporation Litigation* action. See *In re Cendant Corp. Litig.*, 182 F.R.D. 144 (D.N.J.1998).

By that Opinion, this Court announced the procedure it would use to select the lead counsel to represent the plaintiff class. The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 77z–1, et al., attempts to protect the plaintiff class and ensure that the total attorneys fees and expenses awarded by a court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class. 15 U.S.C. § 77z–1(a)(6). To implement the objectives of the PSLRA, this Court determined that the selection of counsel should be the subject of competitive, adversarial bidding. *In re Cendant Corp. Litig.*, 182 F.R.D. 144 (D.N.J.1998).

The Court invited any attorney who wanted to be lead counsel for either the Prides class or the class of shareholders excluding the Prides-holders to submit a sealed bid to the Court. A number of attorneys and law firms submitted bids which, among other requirements, contained their professional qualifications and their ability to undertake and maintain all costs of the litigation. The Court reserved the right to reject any bid which it deemed not to have been made in good faith or which was contrary to the interests of either plaintiff class. Id. Recognizing that the PSLRA gives the lead plaintiffs the statutory opportunity to choose their counsel, subject to the approval of the Court, the Court gave lead plaintiffs' original counsel the right of first refusal: if the plaintiffs' original counsel was qualified and had not submitted the lowest qualified bid, it was given the opportunity to agree to the terms of what the Court had found to be the lowest qualified bid. Kirby, McInerney & Squire, LLP (the "Kirby firm"), the original counsel for Welch & Forbes, lead plaintiff for the Prides class, exercised that right, and on October 7, 1998, accepted the terms and fee bid schedule of the lowest qualified bid to represent the Prides class. On October 8, 1998, the Court appointed the Kirby firm as Lead Counsel for the Prides class.

On November 11, 1998, lead plaintiff for the Prides class filed an Amended and Consolidated Class Action Complaint ("Amended Complaint") against Cendant, Cendant Capital I, officers and directors of Cendant (including former directors of HFS and CUC), Ernst & Young (CUC's independent auditor from 1983 through early 1998), Merrill Lynch, and Chase. That Complaint alleged that the registration statement and prospectus for the Prides Offering contained materially false and misleading statements and that Cendant made other misstatements and omissions of material fact on and after April 15, 1998. Claims arising under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 were asserted on behalf of a class of purchasers or acquirers of Prides from February 24, 1998 through April 15, 1998, together with claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of those persons who

purchased or acquired Prides from April 16, 1998 through July 15, 1998.

With the Amended Complaint, lead plaintiff filed a motion for certification of a class of those persons who purchased or acquired Prides from February 24, 1998 through April 15, 1998 with claims under the Securities Act of 1933, a motion for summary judgment against Cendant under § 11 of the Securities Act of 1933, and a motion for preliminary injunctive relief to require Cendant to place $300 million in trust pending resolution of those claims. The Court de-consolidated this action and styled its caption *In re Cendant Corporation Prides Litigation,* Civ. No. 98–2819. Before the motions for class certification, summary judgment, and injunctive relief were adjudicated, the parties announced that they had reached an agreement in principal on January 7, 1999. A proposed settlement agreement was presented to the Court on March 17, 1999.

The settlement agreement is between and among the plaintiffs (the class of persons who purchased Income or Growth Prides during the period February 24, 1998 through April 15, 1998) and the defendants Cendant Corp., Cendant Capital I, Merrill Lynch, and Chase. Under it, Cendant has agreed to issue to each authorized claimant one Right in respect of each Prides that was beneficially held by such claimant at the close of business on April 15, 1998 and with respect to which a timely and valid proof of claim has been filed. Rights will be issued to an authorized claimant regardless whether that claimant continues to hold Prides. Cendant will issue two New Income Prides or two New Growth Prides to any person who delivers to Cendant three Rights, together with two existing Income or Growth Prides, respectively, before the expiration date. The expiration date will be the close of business on February 14, 2001, unless the Prides are amended. The New Income and Growth Prides will have the same terms as the existing Income and Growth Prides, respectively, except that the Settle-

ment Rate shall be modified such that the value of each of the New Prides will exceed the value of each of the existing Prides by $17.57, subject to adjustment in the event that individual claims must be reduced to pay counsel fees: each Right has a stated or theoretical value of $11.71 (2/3 of $17.57). Although defendant Merrill Lynch held 738,526 Prides at the close of business on April 15, 1998, it is not a member of the class and it is not entitled to receive any Rights. Defendants who held Prides at the close of business on April 15, 1998 are excluded from the class of authorized claimants. The parties have agreed that the total theoretical value of Rights available to satisfy the claims of the eligible members of the class, fees of Lead Counsel, and litigation expenses is approximately $341,480,861 (29,161,474 Rights × $11.71).

Plaintiffs agreed to dismiss with prejudice any claims arising under the Securities Act of 1933, based upon any purchase of Prides on or before April 15, 1998. Claims in the Complaint from the purchase of Prides on or after April 16, 1998 are not settled or released. Plaintiffs have also released Merrill Lynch and Chase from liability for any conduct, including theoretical valuation and pricing of the Rights, performed pursuant to the settlement.

Now, Lead Counsel seeks fees not in cash but in the same Rights granted to the class. The Kirby firm seeks a fee of 2,916,147 Rights with a limit that no more than 2,043,303 come from the class itself. The theoretical value of these Rights is approximately $34,148,081. Lead Counsel argues that most, if not all, of its fee will come from unclaimed Rights. Because Merrill Lynch is not entitled to receive any rights, Lead Counsel could receive the 738,526 Rights which represent Merrill's Prides. Lead Counsel maintains that its fee request is reasonable because the Court should take into account that it achieved a full recovery, in aggregate, for class members for their 1933 Act losses in less than two years, that its approach was

novel, that it seeks fees in Rights rather than cash, which bears risk to it. According to Lead Counsel, the proposed fee will come at little or no expense to the class; the class will be charged less than it would be under the bid.

Counsel for the Aboff Family Trust has objected to Lead Counsel's fee request on the basis that it is excessive. Counsel contends that if the Court awards Lead Counsel less fees than it now requests, then the remaining Rights should be distributed to participating class members pursuant to a Court order increasing the theoretical value of the Rights to be distributed under the settlement. Cendant opposes this proposal because "it would radically alter a provision of the settlement stipulation for which Cendant bargained and which is a valuable component of the deal from Cendant's perspective." (Cendant's Br. in Opp. at 4–5.) Cendant argues that "[u]nder the settlement, any undistributed Rights after Rights are distributed to class members who submit timely and valid proofs of claim and to Lead Counsel in satisfaction of court awarded fees and expenses, would be canceled. In other words, the future equity in Cendant represented by such undistributed Rights would continue to belong to Cendant and its current stockholders." (Id. at 5.) Cendant contends that it bargained for such a settlement and should not be deprived of its contractual right to cancel any unclaimed Rights.

## DISCUSSION

### A. Approval of the Settlement

The Court considers the settlement to be eminently fair and reasonable. The class is made completely whole by such compensation. There are no objections voiced to the settlement-only to the request for attorney fees. The proposed settlement is approved subject to the following modifications to the attorneys' fees.

### B. Lead Counsel's Application for Attorneys' Fees

The fee determination rests upon two basic considerations of Congress which motivated its passage of the PSLRA, 15 U.S.C. § 77z–1, et al. They are the need for the reasonable cost of quality legal representation of the plaintiff class and the accompanying desire to prevent, if possible, a defendant corporation from becoming moribund as a result of litigation and its costs. To implement the objectives of the PSLRA, the Court employed the use of competitive, adversarial bidding in its approval of lead counsel.

This stage of the litigation, notwithstanding that Lead Counsel has moved for summary judgment, is what would be normally the discovery period, very early on in the litigation. The Court considers Cendant's acknowledgment of liability in its April 15, 1998 news conference and the acceptance by Lead Counsel of the terms of the lowest qualified bid. The Court appreciates Lead Counsel's verve and the eminently satisfactory results it obtained for the class. There are no objections to the settlement agreement.

Lead Counsel argues that its request for fees will not impair the class's Rights because they will come from unclaimed Rights. That argument is speculative. The amount of unclaimed Rights cannot be determined at this time because it is a future contingency. (And we have no data to form a reasonable projection of what may be.) In the event that unclaimed Rights do not satisfy Lead Counsel's requested fees, any deficit would have to be assessed to the class.

Yet Lead Counsel bargained for the right to represent the class by the October 7, 1998 acceptance of the lowest qualified bid percentage, a percentage which would obligate the class to its Lead Counsel less than the now requested fees. Apropos the auction and resulting bid, the Court promised that such bid would serve "as a benchmark of reasonableness," 182 F.R.D. at 152, to enable "a thorough judicial review

of fee applications ... required in all class action settlements." *In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 819 (3d Cir.1995). This Court has examined the time expended by Lead Counsel and the regular hourly rates of its services. Lead Counsel, through its principal partners, associates, and paralegals expended approximately 5,600 hours, and its senior partners have a regular hourly rate of $495. This represents significant effort. But the Court is more impressed by the quality of result than the quantity of effort. The class will receive its full entitlement. And resolution of this matter was greatly accelerated by the creative dynamism of counsel. For this, counsel should not be penalized by a slavish application of the lodestar. We have seen the gifted execution of responsibilities by a lead counsel.

As said, the total theoretical value of Rights available to claims of the class, fees and expenses of Lead Counsel is $341,480,-861. The Court finds the expenses of $2,367,493 were reasonable and necessary to the prosecution of this litigation. That amount, in equivalent Rights (202,177), shall be deducted from the gross $341,480,-861 (29,161,474 Rights) and issued to Lead Counsel.

The balance of $339,113,368 (28,959,297 Rights) shall be subject to counsel fees. The Court determines that counsel fees of 5.7% of this net balance are reasonable. Lead Counsel shall receive that number of Rights (1,650,680) equivalent to 5.7% of 28,959,297 Rights, approximately $19,329,-463.

The Court directs Lead Counsel to seek to satisfy payment of these awards of expenses and fees first from any unclaimed Rights. Then, and only then, to the extent that such fees and expenses have not been satisfied by unclaimed Rights, shall any deficiency be assessed against and borne by the class.

Any Rights unclaimed after authorized class claimants and Lead Counsel have been issued their entitled Rights shall be canceled by Cendant Corporation. The Court cannot modify the express terms of the settlement negotiated by the parties. Each is entitled to the fullness of its bargain obtained.

### CONCLUSION

The proposed settlement is approved subject to the above modifications to attorneys' fees. The application of counsel for the Aboff Family Trust for attorneys' fees is denied for the reasons expressed during the waste of the Court's time at oral argument.

SO ORDERED.