

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-13-2000

# In Re: Cendant Corp.

Precedential or Non-Precedential:

Docket 00-5198

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"In Re: Cendant Corp." (2000). *2000 Decisions*. Paper 248.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/248

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 13, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-5198

In Re: Cendant Corporation PRIDES Litigation

WELCH & FORBES, INC., an institutional investment
manager, individually and on behalf of all others similarly
situated

v.

CENDANT CORPORATION; MERRILL LYNCH & CO.;
CHASE SECURITIES, INC.; HENRY R. SILVERMAN;
WALTER A. FORBES; COSMO CORIGLIANO

       SANTANDER MERCHANT BANK LIMITED,
       (Pursuant to Rule 12(a), F.R.A.P.)
       Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 98-cv-02819)
District Judge: Honorable William H. W alls

Argued
October 25, 2000

Before: BECKER, Chief Judge, and MANSMANN and
FUENTES, Circuit Judges.

(Filed: December 13, 2000)

Kathryn A. McDonald, Esquire
 (Argued)
Jayne S. Robinson, Esquire
Robinson, Murphy & McDonald
100 Park Avenue
New York, NY 10017

Paul J. Dillon, Esquire
Bloom, Rubinstein, Karinja & Dillon
70 South Orange Avenue
Suite 215
Livingston, NJ 07039

 Counsel for Appellant

Michael M. Rosenbaum, Esquire
 (Argued)
Carl Greenberg, Esquire
Budd, Larner, Gross, Rosenbaum,
Greenberg & Sade
150 John F. Kennedy Parkway
CN 1000
Short Hills, NY 07078-0999

Samuel Kadet, Esq.
Skadden, Arps, Slate, Meagher
 & Flom
Four Times Square
New York, NY 10036

 Counsel for Appellee
Cendant Corporation

Roger W. Kirby, Esq.
Kirby, McInerney & Squire
830 Third Avenue
10th Floor
New York, NY 10022

 Counsel for Appellee
Welsch & Forbes, Inc.

OPINION OF THE COURT

MANSMANN, Circuit Judge.

Santander Merchant Bank Limited appeals the District
Court's denial of its Fed. R. Civ. P. 60(b) motion for
reconsideration of the final judgment that excluded
Santander from the settlement of the underlying securities
fraud action brought by investors against Cendant.
Specifically, Santander claims that the District Court erred
in failing to apply correctly the standards for determining
"excusable neglect" in denying Santander's proof of claim
which was mailed three days late.

Cendant counters Santander's appeal on numerous
grounds, only one of which is left to us to consider in this
appeal, the other claims having been resolved against
Cendant in our opinion in a related case, In re Cendant
Corporation Prides Litigation, No. 00-5199, slip op. (3d Cir.
Nov. ___, 2000).1 Cendant's sole remaining counter-
argument is that the District Court properly denied
Santander the ability to participate in the settlement
because Santander failed to demonstrate "excusable
neglect." On the facts before us, we find that the District
Court's decision in concluding that Santander did not
demonstrate that excusable neglect caused the delay was
not consistent with the sound exercise of its discretion. We
will, therefore, reverse.

Because related litigation is already the subject of at least
three published opinions, each exhaustively setting forth
the procedural and factual background, we will not do so
here, but instead refer interested parties to these prior

_____

1. In 00-5199, we concluded that the District Court had the power to
extend the deadlines stipulated in the Settlement and had retained the
discretion to allow late-filed and late-cured claims. Equally applicable
here (though that case involved Fed. R. Civ. P. 6(b)(2) and this case
involves Fed. R. Civ. P. 60(b)) is our second conclusion in 00-5199 that
the appropriate standard under which to evaluate requests to allow tardy
proofs of claim or requests to cure is "excusable neglect."

3

dispositions.2 We set forth only those facts crucial to a resolution of the disputes here.3

I.

This appeal is one of several which arise out of the large securities fraud class action (Cendant PRIDES litigation) involving Cendant and its former officers. In June 1999, the District Court approved a $340 million settlement of the Cendant PRIDES class action litigation. Under the terms of the Stipulation of Agreement of Settlement and Compromise (the "Stipulation"), Cendant agreed to distribute one Right, with a theoretical value of $11.71, for each PRIDES owned as of the close of business on April 15, 1998. See also In re Cendant Corp. Prides Litig., 51 F.Supp. 2d at 539-40.4 To collect the Rights each PRIDES owner was required to submit a valid proof of claim by June 18, 1999. Under the terms of the Settlement Hearing Order, a settlement administrator, Valley For ge Administrative Services, was to verify the proofs of claim. The Rights, which are publicly traded, expire on February 14, 2001, when, in combination with the current PRIDES, they will be exchanged for new PRIDES.

Class members who wished to participate in the settlement were asked to submit a completed pr oof of claim form by prepaid first class mail postmarked on or before June 18, 1999, addressed to the administrator as set forth in the notice. The class notice further provided that proofs

_____

2. In re Cendant Corp. Litig., 182F.R.D. 144 (D.N.J. 1998), In re Cendant Corp. Prides Litig., 51 F.Supp. 2d 537 (D.N.J. 199), and In re Cendant Corp. Prides Litig., 189 F.R. D. 321 (D.N.J. 1999), provide a full factual and procedural history of this litigation.

3. Bearing in mind the expedited nature of this appeal, for our recitation of the pertinent historical facts we have relied heavily upon the appellant's brief. These facts are of r ecord, and for the most part, not disputed by the parties.

4. PRIDES are a particular category of Cendant Security. Cendant agreed to issue two New Income Prides or two New Gr owth Prides to any person who delivered to Cendant three Rights, together with existing Income or Growth Prides, respectively, befor e the expiration of the close of business
on February 14, 2001, unless the Prides are amended. Id.

4

of claim would be deemed to have been filed when posted, if mailed by first class mail or air mail, postage prepaid, and addressed in accordance with the instructions given; proofs of claim filed otherwise would be deemed to have been filed when actually received by the administrator.

The record in this case shows that on June 16, 1999, two days before the mailing deadline, Douglas Preston, the General Counsel and Chief Compliance Officer of Santander Investment Securities, Inc., finalized a proof of claim form on behalf of appellant Santander Merchant Bank for 301,400 PRIDES (worth, at the $11.71 settlement value, approximately $3.5 million). Preston delivered the proof of claim form to his assistant, Iris Figueroa, for mailing to the administrator by postage pre-paid first class mail, certified with return receipt requested. Preston saw Figueroa place the completed proof of claim form in an envelope, address the envelope as provided in the claim form instructions and affix a certified mail sticker to the package. Figueroa delivered the envelope to Santander's mail department and instructed the mailroom staff to mail the envelope immediately by first class certified mail. A member of the mailroom staff informed Figueroa that he would take the package to the post office that day, and Figueroa reported back to Preston that the package had been mailed. Thus, Santander believed that its proof of claim form had been mailed on June 16, 1999, two days before the deadline.

Though unknown to Preston at the time, Santander's proof of claim languished unattended in the mailroom for a week.5 On June 23, 1999, a new outside manager arrived to oversee and manage mailroom services. Upon his arrival, the manager discovered a large quantity of undelivered outgoing mail in the mailroom, including several pieces of certified mail, which he processed. The proof of claim form was apparently among the undelivered mail discovered on June 23, 1999, and it was sent out that day. At this time, apparently neither Preston nor the legal department knew that a mailroom problem had occurred or had any

_____

5. Though largely immaterial here, disgruntled mailroom employees may have learned of their imminent replacement by an outside vendor and purposefully sabotaged usual mailroom functions.

5

knowledge or notice that Santander's claim had not been mailed on June 16.

On September 2, 1999, however, Santander r eceived a letter from the administrator advising that its claim was being denied because it had been "received by [the administrator] after deadline for filing." That letter said nothing about the claim being mailed or postmarked late. Santander was advised by the administrator to write to the Clerk of the Court explaining the reason for the delay.

Thus, when the administrator advised Santander in writing that its claim had been rejected as untimely because it had been received after June 18, 1999, Preston believed that this was an administrative err or on the administrator's part and that the error would be corrected by the Court. Santander wrote to the Clerk of the Court, explaining that the delay in receipt of the proof of claim may have been occasioned by use of certified mail and that Santander believed it had mailed the proof of claim on time and that it had to explain late receipt , not late mailing.

On October 21, 1999, the District Court issued an opinion and order denying Cendant's motion to disallow late-filed proofs of claim and granting class plaintiffs' cross-motion for enlargement of the time to file or to cure proofs of claim. The District Court specifically found that an enlargement of the time to file or corr ect proofs of claim would not prejudice Cendant. The District Court extended the deadline for submitting or curing deficiencies in proofs of claim from June 18, 1999 to September 7, 1999, required a showing of "excusable neglect" for any delay, and directed lead counsel for the class to fur nish the District Court with the reasons for delay advanced by r ejected claimants. Apparently, Santander did not r eceive notice regarding the Court's decision of October 21.

Despite not having received the notice, Santander wrote to the Clerk of the Court, on November 22, 1999, to inquire into the status of its claim. That letter reads in pertinent part:

> We are writing to request infor mation on the status of
> our claim with regard to the above-r eferenced matter.

6

> On September 2, 1999, we responded to a letter
> received from Valley Forge Administrative Services, Inc.
> whereby we affirmed that Santander Investment
> Securities Inc., on behalf of Santander Merchant Bank,
> Limited, had met the deadline for submission of its
> Proof of Claim form.
>
> Therefore, at this time, we would appr eciate receiving
> information on the status of our claim.
>
> If we do not hear from you within the next 20 days,
> this confirms that our status in the claim has been
> accepted.

This letter reflected Santander's understanding that it had timely filed its claim. Santander did not r eceive any response to its November 22 letter. [6]

On January 14, 2000, the District Court denied Santander's claim for being late with "insufficient reason for delay." After receiving the District Court's decision on January 21, 2000, Santander communicated with class counsel and the administrator and asked to r eview the file with respect to its claim. The administrator faxed a copy of the postmarked envelope in which Santander's claim had been sent. Thus, Santander learned that its pr oof of claim form had been postmarked on June 23, 1999-- one week after it had been delivered to the Mailr oom for mailing and three business days after the original filing deadline. Santander claims that this was the first notice that it had that the proof of claim form had not been mailed on June 16, 1999. Preston thereafter investigated the reason for the delay in mailing and learned that its own mailroom "problem" caused the delay.

The District Court's final judgment was enter ed on February 23, 2000. On March 16, 2000, thr ee weeks after the District Court's entry of final judgment on Santander's claim, Santander moved in the District Court that the judgment be vacated under Rule 60(b) on the gr ounds of "excusable neglect." Santander had only discovered in late

---

6. Santander's letter was actually docketed with a notation reading "Copy to Chambers," and the District Court indicated at later oral argument that it was aware of this letter at the time it was received.

January that the claim had been denied due to late mailing rather than late receipt, and had set to work to determine the cause of the late mailing and to try to r emedy the rather severe situation which it faced, that is, being excluded from the settlement. The Rule 60(b) motion cited, inter alia, its mailroom sabotage and good faith efforts to determine the origins of the delay. The District Court held a hearing on March 17, the following day.

The District Court entered an order on Mar ch 21, 2000 denying Santander's claim "for the reasons stated at oral argument," which had been held on Mar ch 17, 2000.

II.

On appeal, Santander challenges the District Court's denial of its Rule 60(b) motion to permit it to participate in the underlying settlement. Specifically, Santander asserts on appeal that in refusing to excuse its thr ee-day delay in the mailing of its proof of claim, the District Court failed to apply properly the standards for deter mining "excusable neglect" outlined in Pioneer Investment Services v. Brunswick Assoc. Ltd. Ptrshp, 507 U.S. 380 (1993).[7] Had the District Court properly applied the law, insists Santander, it would have excused the delay and permitted Santander to participate in the settlement, based upon the following factors, among others: the District Court's finding of no prejudice to Cendant; the delay's de minimis length; the delay's lack of impact on judicial proceedings; Santander's diligent efforts to file on time, its reasonable belief that it had done so, and its diligent ef forts to follow up on its claim; the erroneous notice fr om the Settlement Administrator that the claim had been received late, rather than mailed/postmarked late; and Santander's unchallenged good faith.

In response, Cendant maintains that the District Court decisions here should be affirmed for several reasons

_____

7. In light of our holding in this case in Santander's favor, we need not reach Santander's additional contention that the District Court abused its discretion by treating it less favorably than other similarly situated class members.

8

including that at the time the District Court disallowed the claim, the only excuse Santander provided was that sometimes certified mail can be delayed in r eaching its destination; Santander's "excusable neglect" theory was not presented to the District Court at that time, and so should now be deemed waived; Santander did not offer the requisite "extraordinary circumstances" for Rule 60(b) relief and in particular, did not take timely action to investigate or explain the reason for its late proof of claim; and the mailroom events plaguing Santander were unproved, and even if they had been proved, they were Santander's own responsibility. In sum, Cendant claims that"Santander does no more than attack the District Court's decision as inequitable," and asserts that Rule 60(b) r elief must be grounded on extraordinary circumstances, and not "merely because a movant . . . believes the . . . decision to be unfair."

Our examination requires a two-part analysis: (1) for purposes of the Rule 60(b) motion: whether Santander's delay in bringing its "mail room sabotage" theory to the District Court's attention was excusable; and (2) on the "merits:" whether the "mail room sabotage" theory provides a valid reason for its late submission of its Proof of Claim. The first inquiry regards the District Court's denial of Santander's Rule 60(b) motion for reconsideration of the final judgment that excluded Santander from the Settlement. We review the District Court's denial of the Rule 60(b) motion for abuse of discretion. In r e: O'Brien Envntl. Energy, 188 F.3d 116, 122 (3d Cir . 1999). We have held as to abuse of discretion, generally, that "an abuse of discretion arises when the [D]istrict[C]ourt's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." Oddi v. Ford Motor Co., 2000 WL 1517673, at *7 (3d Cir. 2000) (citation omitted). An abuse of discretion may also occur "when no reasonable person would adopt the district court's view." Id. Finally, "we will not interfere with the [D]istrict [C]ourt's exercise of discretion unless there is a definite and firm conviction that the court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Id.  If we conclude, as we do, that the District Court's decision was not consistent

9

with the sound exercise of its discretion, the second question arises: whether "excusable neglect" excuses Santander's delay in submitting the proof of claims. This involves a review of the matter de novo, applying the law to the facts. Id.

A. The Rule 60(b) Motion

Our first inquiry is whether Santander's delay in bringing its "mail room sabotage" theory to the District Court's attention was excusable. We conclude that it is. Preston's misunderstanding of the August 27th letter infor ming him that the claim had been "received" late was understandable. Santander's prompt response to the August 27th letter and its initiative in sending another letter in November establish that it was not derelict in discovering that its Proof of Claim had been postmarked late.

Fed. R. Civ. P. 60(b) provides, in pertinent part:

> Rule 60. Relief From Judgment or Or der
>
> * * *
>
>  (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may r elieve a party or a party's legal representative fr om a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . or (6) any other reason justifying r elief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.
>
> * * *

(Emphasis supplied).

In Pioneer Inv. Servs., supra, the Supreme Court delineated the analysis required for afinding of "excusable neglect" (made applicable to Rule 60(b) though Pioneer was a bankruptcy case) and held that courts are per mitted, where appropriate, to accept late filings even where caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond a party's control. At the

10

outset, the Supreme Court pronounced that the inquiry is essentially equitable,8 and necessitates considering a situation's totality:

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the deter mination is at bottom an equitable one, taking account of all r elevant circumstances surrounding the party's omission.

Id. at 395.

While "all relevant circumstances" are properly considered, the Supreme Court specifically delineated four factors:

> These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Id. In the wake of Pioneer, we have imposed a duty of explanation on District Courts when they conduct "excusable neglect" analysis. In Chemetr on Corp. v. Jones, 72 F.3d 341 (3d Cir. 1995), we addr essed the Bankruptcy Rule that permits courts to accept late-filed claims when the late-filing was due to "excusable neglect." In Chemetron we held that the bankruptcy court's "analysis failed to adequately consider the totality of the circumstances presented." Id. at 349. Specifically, we faulted the court for failing "to make additional relevant factualfindings, including the danger of prejudice to the debtor , the length of the delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith." Id. at 350. The panel

_____

8. In the culminating argument in its brief, Cendant claims that "Santander does no more than attack the District Court's decision as inequitable," and asserts that Rule 60(b) r elief must be grounded on extraordinary circumstances and not "merely because a movant . . . believes the . . . decision to be unfair." Rule 60(b) relief is designed to
prevent such unfairness and precisely requires such an equitable inquiry.

11

"remand[ed] the issue to the bankruptcy court, with directions [to] undertake a more comprehensive and thorough determination of whether the totality of the circumstances support claimants' defense of `excusable neglect.' " Id.; see also O'Brien , 188 F.3d at 127 (faulting a district court for not making specific findings as to prejudice).

In our view, the District Court's decision her e suffers from the same defects identified in Chemetron and O'Brien. On Santander's Rule 60(b) motion, the District Court should properly have entertained an analysis of the factors constituting "excusable neglect" to deter mine whether Santander had met them. To fail to do so is a failure on the part of the District Court to properly apply the law to the facts of this case and provides grounds for reversal on the basis of abuse of discretion. See O'Brien , 188 F.3d at 122 (abuse of discretion where ruling below founded on error of law or misapplication of law to facts). Here, the District Court did not apply the Supreme Court's enunciated factors for "excusable neglect," even when Santander urged it to do so at the oral argument. On March 21, 2000, the District Court denied Santander's claim "for the r easons stated at oral argument."

At the Rule 60(b) motion hearing, the District Court declined to make a substantive analysis of the Pioneer "excusable neglect" factors, and rather , encouraged Santander to bring the case here, to the Court of Appeals. The District Court expressed impatience with the delay in Santander's bringing forth the mailroom debacle theory, without considering Santander's good faith or possible "excusable neglect" circumstances, stating that Santander failed to "get[ ] off its corporate duff to make the claim that you make now for excusable neglect." The District Court seemed to further abdicate its responsibility to apply the "excusable neglect" standard of Rule 60(b) when it suggested that the mailroom debacle was not worthy of the Court's consideration, particularly since Santander was presumed to be a sophisticated litigant not r equiring special protection:

> Look, if you have inexperienced people handling a million plus account, that's your problem, not mine.

[and]

> That is not my problem, especially in this type of
> litigation. This is not a case of orphans and widows.
> This is a case of savvy . . . business investors. And if
> you have some incompetent handling your books, that
> is your problem and not the Court's.

Finally, the District Court concluded that

> I haven't heard anything that has come close to
> occupying the space that would be occupied by a
> determination of excusable neglect . . . .[from the
> attorney].

> I appreciate [the attorney] comes in at the last moment
> .. . . But, from September until now, and particularly
> since the time of the Court's opinion on January 14th,
> we have heard nothing that comes close fr om [the
> attorney] to explain why we are now in March hearing
> this plea, not only to extend time to appeal, but for
> Santander to be excused from judgment. I see nothing
> that would even qualify for excusable neglect under
> any of the motions and therefore they ar e denied.

In short, we find that the District Court's statements at
oral argument do not satisfy the explanation r equirements
we mandated in Chemetron. In addition, we find that in
misapplying the Pioneer factors, the District Court did not
act in the sound exercise of its discretion.

B. Excusable Neglect Factors

We turn now to the applicable factors we delineated
above, applying them to the facts not in dispute or
controverted in the District Court.9

We find that the length of Santander's delays were
insignificant as a matter of law. We agr ee with Santander
that its "delay" in bringing the Rule 60(b) motion was three
weeks: the period between the time the District Court's
decision disallowing its claim became final, February 23,

_____

9. We have accepted the uncontroverted affidavits of Preston and
Figueroa. Cendant does not challenge these except to assert that they
are unverified.

13

and the time it brought its Rule 60(b) motion, March 16. Under O'Brien, "the length of the delay is considered in absolute terms." O'Brien, 188 F .3d at 130. This delay was trivial in light of the one-year outer limit for bringing a Rule 60(b) motion imposed by the Federal Rules of Civil Procedure, and under O'Brien, in which we concluded that a two-month delay was insignificant as a matter of law, see id.

Similarly trivial was Santander's delay in filing its initial Proof of Claim, five days or three business days, as Santander prefers to characterize it: the period between the original filing date, Friday, June 18, 1999 and the date the claim was postmarked, Wednesday, June 23, 1999. We agree with Santander that these few days could not have had any real impact on the judicial proceedings.

The reason for the delay here was either unforeseeable sabotage by mailroom employees who purposefully misled Santander, or even more simply, a mailr oom which did not operate as it should have in the ordinary course of business.10 Though the District Court dismissed this reason as "internal to your organization," we have reaffirmed that in Pioneer, the Supreme Court "explicitly rejected the argument that excusable neglect applies only to those situations where the failure to comply is a result of circumstances beyond the [claimant's] r easonable control." O'Brien, 188 F.3d at 125.

There is not any evidence that Santander acted in bad faith, either in bringing its Rule 60(b) motion or in filing its late claim. On the contrary, there is abundant evidence that Santander acted with good faith throughout. Those individuals directly responsible for the Santander claim, Preston and Figueroa, were far fr om derelict in performing

_____

10. Interestingly, in the course of the settlement litigation, the District
Court did accept as valid both reasons similar to, and even those less compelling, than Santander's. For example, in another claimant's case, Mellon's delay in filing was excused because a clerk at Mellon who had been ill and depressed for months was der elict in his duties. In addition,
two other class members were excused due to mailroom problems: in one case mail was handled "contrary to custom," and in the other, there were problems in an internal corporate mailroom.

14

their duties. Santander's agents took steps to ensur e that the proof of claim would be mailed out in a timely fashion, and reasonably believed that it had. When err oneously notified that the claim had been rejected due to late receipt, Santander took whatever steps it could to investigate and to mitigate damage to itself. A period ensued during which Santander was "shut out" of communications to class members, and upon learning very late in the game the true reason for the denial, the late mailing, Santander acted with reasonable haste to investigate the pr oblem and to take available steps toward a remedy.

Finally, in terms of prejudice to Cendant, the District Court found that Cendant would not suffer any prejudice when the District Court extended the deadline fr om June 18 to September 7, 1999, after Santander's claim had been mailed and received. The Court found that Cendant would not be harmed because the original limits of Cendant's financial obligation had not been expanded. Cendant's argument that it is now prejudiced because the settlement money which might now go to Santander will not be "leftover" for Cendant to recoup is without merit.11 In truth, since the only "prejudice" Cendant would suffer by being forced to pay Santander is the "loss of a windfall," we conclude that Cendant will suffer no pr ejudice at all. See id. at 128.

III.

After a careful review of the recor d, we find that the District Court's misapplication of the Pioneer  factors in denying Santander's Rule 60(b) motion to be beyond the sound exercise of its discretion. W e further find that any neglect by Santander in submitting its Proof of Claim form late was "excusable neglect," justifying the allowance of its claim to settlement participation. We thus r everse the District Court's denial of Santander's claim on the basis of

_____

11. See In re Cendant Corporation Prides Litigation, No. 00-5199, slip op. (3d Cir. Nov. ___, 2000) for further discussion of the District Court's finding that Cendant would not be prejudiced by a time extension.

15

delay and remand solely for inclusion in settlement proceedings.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

16