**KOHL'S DEPARTMENT STORES, INC., Appellant,**

v.

**LEVCO–ROUTE 46 ASSOCIATES, L.P., Defendant/Third–Party Plaintiff,**

v.

Colloid Environmental Technologies Co.; Crowne Bldg Corp; Aduron Systems, Inc.; the May Department Stores Company; Technical Roofing Solutions, Inc., Third–Party Defendants.

No. 04–1600.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to LAR 34.1(a) Jan. 20, 2005.

Decided Feb. 18, 2005.

Douglas E. Arpert, Norton, Arpert, Sheehy & Higgins, West Paterson, NJ, for Appellant. Neal H. Herstik, Gross, Truss & Herstik, Freehold, NJ, for Appellee.

Before ALITO, MCKEE, and SMITH, Circuit Judges.

## OPINION OF THE COURT

SMITH, Circuit Judge.

Kohl's Department Stores, Inc. ("Kohl's") appeals a final order denying its motion under Federal Rule of Civil Procedure 60(b)(1) for relief from dismissal of its case against Levco–Route 46 Associates, L.P. ("Levco") after a settlement agreement between the parties unraveled. Because we conclude that the District Court authoring the order did not abuse its discretion in denying Kohl's motion for relief, we will affirm.

### I.

#### A. *Facts and Procedure*

The dispute underlying this appeal arose in 1999 when department store operator Kohl's complained to Levco, the landlord for its West Paterson, New Jersey store, about a leaky roof. After Levco allegedly refused to fix the roof and Kohl's performed some repairs at its own expense, Kohl's sued for breach of contract. Levco counterclaimed, alleging that Kohl's breached the lease by damaging the roof while attempting repairs. When Levco sought to evict Kohl's, Kohl's obtained a preliminary injunction from the District Court prohibiting Levco from terminating Kohl's lease and allowing Kohl's to replace its roof at its own expense. Critically for this appeal, the lease was guaranteed by the May Department Store Company ("May") and Kohl's corporate parent, Kohl's Corporation ("Kohl's Corp.").

Late in 2002, the District Court referred the case to mediation. Mediation yielded promising results, and the parties repeatedly persuaded the Magistrate Judge (who by then was managing the case) to delay a status conference to discuss the progress of settlement. During mediation, the parties expressly agreed that the impending settlement was conditioned upon

the consent of the lease's guarantors, May's and Kohl's Corporation. On June 4, 2003, roughly a week before the scheduled status conference, the District Judge told the parties to appear in court the next day because the District Judge and the Magistrate Judge were "highly concerned about case management and the serious delays that the adjournments had already caused...."

The parties responded that a hearing was unnecessary and that neither party would object to entry of an order of dismissal. On June 5, the District Court entered an order dismissing the case with prejudice while providing the parties 30 days to reopen the case to enforce the terms of the settlement.

Settlement did not occur because May did not consent. From the end of May through July 5, when the 30-day window for reopening the case closed, Kohl's and Levco exchanged correspondence noting that May had not consented. On May 29, Levco's counsel e-mailed Kohl's counsel, noting that the guarantors were not yet "on board." Levco's counsel e-mailed Kohl's' counsel on June 24 that a "final version of a lease mod[ification] doc[ument]" still "need[ed] guarantor approval." Levco's counsel added that, "[o]nce approved by my client, I will send to May[ ] for review. Similarly, you should send to Kohl's Corp. and get their signature." Six days later, Kohl's' counsel urged Levco's counsel in an e-mail to get the settlement documents executed, explaining that "we have a court deadline and though I am loath to tell the court it must be extended, I will do so unless we can get these executed. Also can you confirm that May has signed onto the lease mod[ification]?" That same day, Levco's counsel responded that he did not have May's approval and asked whether Kohl's had signed off on the agreement. July 5

passed uneventfully. On July 14, Levco's counsel explained to Kohl's' counsel that May had not yet reviewed the settlement documents.

According to Kohl's, it learned on July 21 that May *would not* consent. Mediation efforts in August failed. On September 15, Kohl's informed the District Judge by letter that the settlement had disintegrated. The District Court responded by letter on October 22 noting that a hearing "with regard to enforcement of the terms of the settlement agreement" was scheduled for October 30.

At that hearing, counsel for both Kohl's and Levco testified about their interactions leading up to, and following, dismissal of the case. Asked why Levco did not seek an extension of the June 5 order when in early July May still had not consented, Levco's counsel testified that he "had no reason to believe at that time that May would not consent. I never—it never even entered my mind that May's would not consent." Kohl's explained that it did not seek an extension of the June 5 order, or seek May's consent itself, because it expected May's consent to be forthcoming and viewed the task of obtaining that consent as Levco's. As the hearing closed, the District Judge explained that she could not rule on a Rule 60(b) motion because no such motion had been filed.

On November 19, Kohl's moved to vacate the District Court's June 5 dismissal order under Federal Rule of Civil Procedure 60(b)(1). In February 2004, the District Court denied the motion, concluding that Kohl's had established that it had neglected to seek relief from dismissal of the case, but that Kohl's had not explained, as required under Rule 60(b)(1), why that neglect was excusable.

B. *District Court Opinion*

The District Court analyzed whether Kohl's had shown excusable neglect under

the four factors outlined by the Supreme Court in *Pioneer Investment Services v. Brunswick Associates,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), as follows: "1) the danger of prejudice to the non-movant; 2) the length of delay; 3) the potential impact on judicial proceedings; and 4) the reason for the delay, including whether it was within the reasonable control of the movant and whether the movant acted in good faith."

First, regarding prejudice to the non-movant, the District Court appeared to consider only prejudice to the movant, Kohl's. The Court concluded denial of Rule 60(b)(1) relief would not prejudice Kohl's because Kohl's "has not been denied its day in Court," had ample time to arrange a settlement, did not object to the terms of the dismissal order, and had thirty days after entry of the dismissal order to reopen the case when it realized that the condition of May's approval had not been satisfied. Second, regarding the length of delay, the District Court determined that under the circumstances Kohl's waited too long to file for relief under Rule 60(b)(1). In particular, Kohl's' delay was inexcusable because Kohl's "operated under no misunderstanding regarding the necessity of seeking May's approval, nor the fact that it had not been obtained, nor the fact that it was necessary to timely ask the Court to reopen."

Third, regarding the potential impact on judicial proceedings of reopening the case, the District Court found that Kohl's had not expeditiously moved the case along after receiving injunctive relief in 2002. To allow Kohl's to reopen the case would infringe on the District Court's "strong interest in case management," which Kohl's repeatedly had rebuffed. Fourth,

regarding the reason for the delay, the District Court emphasized that Kohl's made a "strategic decision to do nothing" in the face of May's ongoing lack of consent.

The District Court accordingly denied Kohl's Rule 60(b) relief. Kohl's appeals.

## II.

We review the District Court's denial of relief under Rule 60(b) for abuse of discretion. *In re Cendant Corp. PRIDES Litig.,* 234 F.3d 166, 170 (3d Cir.2000).[1] Nevertheless, District Courts considering Rule 60(b)(1) claims of excusable neglect have a "duty of explanation." *In re Cendant Corp. PRIDES Litig.,* 235 F.3d 176, 182 (3d Cir.2000). A district court must consider each of the four *Pioneer* factors and the totality of the circumstances. *Id.* While the District Court effectively did not consider one of the *Pioneer* factors in denying Kohl's' Rule 60(b)(1) motion, our de novo review of the claim compels us to affirm the judgment of the District Court.

### A. Rule 60(b) Hearing

■ Kohl's argues that the record in this appeal provides an inadequate basis for de novo review of its Rule 60(b)(1) motion because the District Court never held a formal hearing on that motion. There is no requirement that a District Court hold a formal hearing before deciding a motion under Rule 60(b)(1). Nevertheless, a District Court may not neglect its responsibility to conduct "point by point analysis of prejudice, delay, potential impact on judicial proceedings, or the reason for the delay," *In re Cendant Corp.,* 234 F.3d at 171, or leave such "significant gaps" in its factual findings that de novo

1. The District Court had diversity jurisdiction over this case under 28 U.S.C. § 1332. We exercise appellate jurisdiction over the District Court's final decision, dismissing this case with prejudice, under 28 U.S.C. § 1291.

review on appeal is frustrated. *Id.* at 172. No such significant gaps exist here, however, and our review is not frustrated. We can determine on the basis of facts not in dispute whether the District Court properly exercised its discretion in denying Kohl's relief under Rule 60(b)(1). *See In re Cendant Corp.*, 235 F.3d at 182–83.

### B. *Pioneer* Factors

#### 1. *Danger of Prejudice to the Non–Movant*

■ Kohl's argues that the District Court's denial of Rule 60(b) relief should be reversed because the Court did not consider the (lack of) prejudice to Levco entailed in granting such relief. Although we agree that the District Court incorrectly skipped the first *Pioneer* factor, that error does not require reversal. A District Court must consider each of the four *Pioneer* factors when it considers a Rule 60(b)(1) motion. *See In re Cendant Corp.* 234 F.3d at 171, 173. Moreover, Kohl's is correct that Levco cannot show prejudice if it avers no more than loss of a windfall resulting from the grant of Rule 60(b) relief. *See In re O'Brien Environmental Energy, Inc.* 188 F.3d 116, 127 (3d Cir. 1999). Because the District Court did not consider prejudice to Levco in denying Kohl's' motion for Rule 60(b) relief or make any factual findings in this regard, we will assume *arguendo* that Levco was not surprised by Kohl's' motion and would suffer no more than loss of a windfall had Rule 60(b) relief been granted. Nevertheless, the District Court correctly denied Kohl's Rule 60(b)(1) motion because under the totality of the circumstances Kohl's' neglect in seeking to reopen its case remains inexcusable.

#### 2. *Length of Delay and Its Potential Impact on Judicial Proceedings*

Kohl's contends that the District Court abused its discretion by failing to consider the potential impact of Rule 60(b)(1) relief on judicial proceedings. That is incorrect. The District Court found that Kohl's had "repeatedly rebuffed" the Court's efforts at managing its case and that Kohl's (and Levco) caused "serious delays" by adjourning scheduled status conferences on assurances that the case would settle. In light of these findings, which are not clearly erroneous, the District Court properly concluded that reopening the case would negatively impact judicial proceedings. Further, the District Court conducted substantial analysis of the other element of this *Pioneer* factor, the length of the delay.

Kohl's challenges the District Court's finding that Kohl's acted inexcusably in waiting roughly four months to file a Rule 60(b) motion. As the District Court correctly noted, however, the delays in filing for Rule 60(b) relief in both *Cendant Corp.* and *O'Brien* were excused "because the parties moving for relief from judgment were not aware of the grounds for relief from judgment until shortly before they brought their 60(b) motions." That did not occur here, as Levco repeatedly reminded Kohl's that May's consent remained outstanding. Hence, the District Court permissibly determined that Kohl's waited too long under *Pioneer* to file its Rule 60(b) motion.

#### 3. *Reasons for Delay, Including Whether it Was Within the Reasonable Control of the Movant*

Kohl's further argues that a "mutual mistake" by Kohl's and Levco regarding the likelihood of May's consent caused Kohl's not to reopen the case before it was dismissed with prejudice and partly caused Kohl's to delay in filing for Rule 60(b) relief. That argument is entirely without basis. There was no judicially cognizable

mutual mistake. As the record of e-mail exchanges makes plain, both Kohl's and Levco knew with certainty through the July 5 deadline that May had not consented; yet, Kohl's chose to do nothing. It is irrelevant that until July 21 Kohl's thought May *would* consent. Kohl's let the crucial July 5 deadline pass without taking any steps to notify the Court that the settlement was in jeopardy and without seeking May's consent. Ultimately, Kohl's did not notify the District Court that the settlement had unraveled until September and did not formally file for Rule 60(b) relief until November. As the District Court found, "Kohl's actions were based on knowledgeable and counseled decisions." It was thus not improper to conclude that this *Pioneer* factor weighs heavily in Levco's favor. *See Coltec Industries, Inc.*, 280 F.3d 262, 274 (3d Cir.2002) (declining to provide Rule 60(b) relief where movant was "trying to escape the consequences of [its] counseled and knowledgeable decisions") (citation omitted)).

### 4. *Movant's Good Faith*

Kohl's argues that the District Court erroneously found that Kohl's acted in bad faith. According to Kohl's, the District Court's finding of bad faith appears in its statement that "Kohl's decided to forego pursuit of May's approval in the hope that Levco would get it or choose to abandon its condition." That argument lacks merit. As it repeatedly stressed, the District Court merely found that Kohl's had made a strategic decision not to act. Moreover, we have held that a party acts in good faith where it acts with "reasonable haste to investigate the problem and to take available steps toward remedy." *In re Cendant Corp.*, 235 F.3d at 184. In light of the undisputed facts, Kohl's did not act with reasonable haste in not seeking to reopen its case before July 5, in failing to notify the Court until September that the

settlement had come apart, and in failing to file a Rule 60(b) motion until November.

### III. Conclusion

In light of the totality of the circumstances, the foregoing analysis of the *Pioneer* factors shows that the District Court correctly determined that Kohl's inexcusably failed to notify the Court for two months that the settlement had unraveled and waited four months to file its Rule 60(b) motion. Accordingly, the District Court did not abuse its discretion in denying Kohl's motion for relief under Rule 60(b)(1).