

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-28-2001

# In Re: Cendant Corp

Precedential or Non-Precedential:

Docket 00-2684

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"In Re: Cendant Corp" (2001). *2001 Decisions*. Paper 197.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/197

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 28, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2684

IN RE: CENDANT CORPORATION LITIGATION

MARTIN DEUTCH,
Derivatively on Behalf of Cendant Corp.,
        Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 98-cv-01664)
District Judge: Hon. William H. Walls

Argued May 22, 2001

Before: BECKER, Chief Judge, SLOVITER and AMBRO,
Circuit Judges

(Filed: August 28, 2001)

Bruce E. Gerstein (Argued)
Brett Cebulash
Garwin, Bronzaft, Gerstein &
 Fisher LLP
New York, NY 10036

Elwood S. Simon
Elwood S. Simon & Associates
Birmingham, MI 48009

David M. Taus
Francis J. Devito
Hackensack, NJ 10166-0153

Richard Brualdi
Law Offices of Richard B. Brualdi
New York, NY 10006

Thomas G. Shapiro
Shapiro, Haber & Urmy
Boston, MA 02109

 Attorneys for Appellant
Martin Deutch

Daniel L. Berger (Argued)
Max W. Berger
Jeffrey N. Leibell
Bernstein, Litowitz, Berger &
 Grossmann
New York, NY 10019

Jeffrey W. Golan
Leonard Barrack
Gerald J. Rodos
Barrack, Rodos & Bacine
Philadelphia, PA l9l03

 Attorneys for Appellee
California Public Employees'
Retirement System, et al.

Samuel Kadet (Argued)
Jonathan J. Lerner
Joseph N. Sacca
Skadden, Arps, Slate, Meagher &

Flom LLP
New York, NY 10036

Carl Greenberg
Michael M. Rosenbaum
Budd, Larner, Gross, Rosenbaum,
 Greenberg & Sade, P.C.
Short Hills, NJ 07078-0999

 Attorneys for Appellee Cendant
Corporation

James G. Kreissman (Argued)
Jacob S. Pultman
Simona G. Strauss
Simpson, Thacher & Bartlett
New York, NY 10017

Herbert J. Stern
Joel M. Silverstein
Stern & Greenberg
Roseland, NJ 07068

 Attorneys for Appellees HFS Inc.
Directors

Greg A. Danilow (Argued)
Weil, Gotshal & Manges LLP
New York, NY 10153

Alan N. Salpeter
Mayer, Brown & Platt
Chicago, IL 60603

Douglas S. Eakeley
Lowenstein Sandler
Roseland, NJ 07068

Cadwalader, Wickersham & Taft
New York, NY 10038

Sills Cummis Radin Tischman
Epstein & Gross, P.A.
Newark, NJ 07102-5400

 Attorneys for Appellees CUC
Directors

3

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Martin Deutch appeals from the District Court's
judgment and orders approving the settlement of a
securities fraud class action brought against Cendant
Corporation, 28 individual defendants, and Ernst & Young,
an accounting firm. Under the settlement, Cendant agreed
to pay $2.85 billion in cash to the class and Ernst & Young

agreed to pay $335 million to the class. In addition,
Cendant and certain of the individual defendants promised
to pay the class 50% of any recovery obtained in their
cross-claims against Ernst & Young. In exchange, the class
agreed to release any and all claims that could have been
brought against the defendants in the class action.

A number of class members objected to the settlement.
Deutch, who was not a member of the class but rather a
current shareholder of Cendant, also objected and moved to
intervene as both a current shareholder and as a derivative
action plaintiff. In two separate opinions filed on August 15,
2000, the District Court rejected the objections of the class
members and Deutch respectively and approved the
settlement.

The approvals generated a flurry of appeals. The appeals
of the class members are being disposed of in a separate
opinion, holding, inter alia, that the District Court did not
abuse its discretion in rejecting the class members'
objections to the settlement and plan of allocation. See In
re Cendant Corp. Sec. Litig., Nos. 00-2520, 00-2683, 00-

2708, 00-2709, 00-2733, 00-2734, 00-2769 and 00-3653
(3d Cir. Aug. 28, 2001). In this opinion, we turn to Deutch's
appeal, which presents distinct issues of law relating to a
current shareholder seeking to present claims on behalf of
the settling corporation.

4

I.

FACTS AND PROCEDURAL POSTURE

Many of the facts set forth in the following section of this opinion will also be set forth and discussed in greater length in the principal opinion dealing with the appeals of the objecting class members. The abbreviated facts included here are those necessary to put Deutch's contentions in context.

A. Discovery of the Misconduct

On December 17, 1997, CUC International, Inc. ("CUC") merged with HFS Inc. ("HFS"). As part of the merger, shareholders of HFS stock were issued shares of CUC common stock pursuant to a Registration Statement dated August 28, 1997 and a Joint Proxy Statement/Prospectus. The surviving corporation was renamed Cendant Corp. ("Cendant"). Cendant is now one of the world's foremost consumer and business service companies, providing shopping, dining, travel, mortgage, and real estate brokerage services. It owns, among other things, Century 21, Avis, and the Ramada and Howard Johnson hotel franchises.

On March 31, 1998, Cendant filed a Form 10-K Annual Report with the Securities Exchange Commission ("SEC"), which included its 1997 financial statements. On April 15, 1998, Cendant announced that it had discovered accounting irregularities in certain former CUC business units and that the annual and quarterly financial statements for 1997 would be restated. Cendant also suggested that financial statements from earlier periods might need to be corrected as well. The next day, Cendant's stock fell from $35 5/8 a share to $19 1/16 a share — a 47% drop. The Audit Committee of Cendant's Board of Directors hired the law firm of Willkie Farr & Gallagher to conduct an independent investigation into the irregularities, and the law firm in turn hired the accounting firm of Arthur Andersen LLP to assist in the investigation. On July 14, 1998, Cendant announced that CUC's financial statements for 1995 and 1996 would also be restated. Following this announcement, Cendant's stock dropped to

$15 11/16. On August 28, 1998, Cendant filed with the SEC a report prepared by Willkie Farr which disclosed, among other things, that the 1995, 1996, and 1997 financial statements materially misstated revenue and income. Cendant's stock further dropped to $11 5/8 on the next trading day.

## B. The Securities Fraud Class Action

Numerous plaintiffs claiming to have acquired CUC or Cendant securities filed lawsuits against Cendant and others alleging, inter alia, federal securities law violations. By an order of the Judicial Panel on Multidistrict Litigation the suits were transferred to the United States District Court for the District of New Jersey and then consolidated. The District Court appointed the California Public Employees' Retirement System, the New York State Common Retirement Fund, and the New York City Pension Funds as Lead Plaintiff.[1] See In re Cendant Corp. Litig., 182 F.R.D. 144 (D.N.J. 1998). The District Court later approved the law firms of Barrack, Rodos & Bacine and Bernstein Litowitz Berger & Grossman LLP to be Lead Counsel for the class. See In re Cendant Corp. Litig., 191 F.R.D. 387 (D.N.J. 1998).

## C. The Amended and Consolidated Class Action Complaint

On December 14, 1998, the Lead Plaintiff filed an amended and consolidated class action complaint ("Amended Complaint") on behalf of all persons and entities who purchased or acquired Cendant or CUC publicly-traded securities, excluding the PRIDES securities,[2] during the period of May 31, 1995 through August 28, 1998

---

1. We refer to Lead Plaintiff in the singular for the reasons explained at In re Cendant Corp. Sec. Litig., Nos. 00-2520 et al., Opinion at 19 n.3.

2. The term "PRIDES securities" refers to a derivative security based on Cendant common stock. The District Court separated all claims brought by holders and former holders of the PRIDES securities and appointed a different lead plaintiff and counsel. The PRIDES claims were settled on March 17, 1999 for $341.5 million in Cendant securities and the District Court approved the PRIDES settlement. See In re Cendant Corp. PRIDES Litig., 51 F. Supp. 2d 537 (D.N.J. 1999), vacated in part by 243 F.3d 722 (3d Cir. 2001) (vacating attorneys' fees award).

("Class Period"). The Amended Complaint named as defendants Cendant, 12 individuals who were former officers and/or directors of CUC (the "CUC Individual Defendants"),3 16 individuals who were former officers and/or directors of HFS (the "HFS Individual Defendants"),4 and Ernst & Young ("E&Y"), which had been CUC's independent public accountant before the merger.

The Amended Complaint alleged that Cendant (as successor to CUC), E&Y, and certain of the CUC and HFS Individual Defendants made numerous false and misleading statements during the Class Period, in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. S 78j(b), and Rule 10b-5, 17 C.F.R. S 240.10b-5. Specifically, a number of SEC filings and press releases issued by CUC allegedly overstated its revenues and operating income for 1995, 1996, and 1997 through improper accounting practices, which allegedly violated Generally Accepted Accounting Principles and were concealed by the defendants.

The Amended Complaint alleged that all of the defendants except Anne Pember and Scott Forbes caused the August 28, 1997 Registration Statement issued in conjunction with the CUC/HFS merger to contain false and misleading statements, in violation of Section 11 of the Securities Act of 1933, 15 U.S.C. S 77k. The Amended Complaint next alleged that Cendant violated Section 12(a)(2) of the Securities Act, 15 U.S.C. S 77l(a)(2), by selling securities through a false and misleading prospectus. The Amended Complaint further alleged violations by certain of the individual defendants of Section 15 of the Securities Act, 15 U.S.C. S77o, Section 20(a) of

_____

3. The CUC Individual Defendants are Walter A. Forbes, E. Kirk Shelton, Christopher K. McLeod, Cosmo Corigliano, Anne M. Pember, Burton C. Perfit, T. Barnes Donnelley, Stephen A. Greyser, Kenneth A. Williams, Barlett Burnap, Robert P. Rittereiser, and Stanley M. Rumbough, Jr.

4. The HFS Individual Defendants are Henry R. Silverman, John D. Snodgrass, Michael P. Monaco, James E. Buckman, Scott E. Forbes, Steven P. Holmes, Robert D. Kunisch, Leonard S. Coleman, Christel DeHaan, Martin L. Edelman, Brian Mulroney, Robert E. Nederlander, Robert W. Pittman, E. John Rosenwald, Jr., Leonard Schutzman, and Robert F. Smith.

7

the Securities Exchange Act, 15 U.S.C. S 78t(a), Section 20A
of the Securities Exchange Act, 15 U.S.C. S 78t-1, and
Section 14(a) of the Securities Exchange Act, 15 U.S.C.
S 78n(a), and Rule 14a-9, 17 C.F.R. S 240.14a-9.

D. Class Certification, Notice, and Settlement
        Negotiations

Concurrent with the filing of the Amended Complaint,
Lead Plaintiff filed a motion to certify the class pursuant to
Fed. R. Civ. P. 23(a) and (b)(3), which the District Court
granted on January 27, 1999. Lead Counsel began
settlement discussions with Cendant and the HFS
Individual Defendants in June 1999, and Lead Counsel
began settlement discussions with E&Y in the subsequent
months.

On December 7, 1999, several months after notice to the
class of the pendency of the class action, Cendant, the HFS
Individual Defendants, and the Lead Plaintiff advised the
District Court that they had agreed to a settlement. Shortly
thereafter, E&Y and the Lead Plaintiff informed the court
that they too had settled. On March 17, 2000, the settling
parties executed a Stipulation of the Settlement.

E. Terms of the Settlement and Plan of Allocation

The settlement with Cendant and the HFS Individual
Defendants provides for a payment by Cendant to the class
of $2,851,500,000 in cash, provides for an additional
payment of 50% of any recovery by Cendant and the HFS
Individual Defendants in their cross-claims against E&Y,
and imposes certain corporate governance changes on
Cendant. These changes include constituting Cendant's
Board of Directors with a majority of independent directors,
constituting the Audit, Nominating, and Compensation
Committees of the Board entirely with independent
directors, and providing for the annual election of all
directors. In exchange, the class members would release all
claims that were filed or could have been filed in the action
against Cendant, the HFS Individual Defendants, and the
CUC Individual Defendants.

As part of the Stipulation of Settlement, Cendant, the
HFS Individual Defendants, and the Lead Plaintiff agreed to

8

request the District Court to approve the settlement as fair, reasonable, and adequate. In addition, these parties asked the court to permanently bar all claims for contribution pursuant to the Private Securities Litigation Reform Act (hereafter "Reform Act"), specifically the provision codified at 15 U.S.C. S 78u-4(f)(7)(A), and as may be provided by applicable federal and state statutes or common law. However, the parties also asked the court to declare that the settlement was not a waiver or release of any claims that could be brought by Cendant against E&Y or any current or former officer or director of CUC, HFS, or Cendant.

The E&Y settlement provides for a cash payment of $335,000,000 to the class. In conjunction with the Cendant and E&Y settlement, the Lead Plaintiff proposed a Plan of Allocation covering what each class member would receive from the settlement. Neither the E&Y settlement nor the Plan of Allocation is at issue in Deutch's appeal.

F. Settlement Notice, Objections, and Approval

The District Court granted preliminary approval of both settlements on March 29, 2000, and Lead Plaintiff proceeded with the required notices of settlement of class actions, mailing over 478,000 to class members and publishing notices in national newspapers and media. Only four class members objected to the settlements and/or the Plan of Allocation.

Martin Deutch, who was not a member of the class but rather a current shareholder of Cendant, also objected and moved to intervene as a current shareholder and a derivative action plaintiff.5 Deutch objected on the following grounds:

_____

5. Deutch had earlier commenced a derivative action in the District Court on behalf of Cendant against several of the CUC and HFS Individual Defendants who were officers and/or directors of Cendant. Deutch alleged that the individual defendants breached their fiduciary duty of loyalty because, acting on insider information, they sold over four million shares of Cendant stock at artificially inflated prices in order to realize over $180 million for their personal gain, and that they breached their fiduciary duties of loyalty, good faith, and due care in mismanaging

9

(1) Cendant was not adequately represented in the class action because 13 of the 14 members of Cendant's board of directors that negotiated and approved the settlement were also defendants in the class action and therefore operated under a conflict of interest;

(2) The settlement was grossly unfair to Cendant and its current shareholders because it eliminated valuable contribution claims against the individual defendants without any meaningful payment into the settlement by these defendants;

(3) The settlement failed to allocate the portion of Cendant's $2.85 billion settlement that was

_____

and wasting corporate assets. Deutch also alleged that Bear Stearns Companies, Inc. and its subsidiary, Bear Stearns and Co., Inc., were grossly negligent in advising HFS on the Cendant merger.

Several defendants moved to dismiss the complaint. On August 9, 1999, the District Court held that Deutch need not have made a demand to Cendant's board of directors to bring that action because any such demand would have been futile. However, the court dismissed the claims against the Bear Stearns defendants on the basis that Deutch lacked standing to sue on behalf of HFS. See In re Cendant Corp. Derivative Action Litig., 189 F.R.D. 117 (D.N.J. 1999).

After the Cendant settlement was announced, Deutch moved for partial summary judgment against the individual defendants, arguing that these defendants violated Section 11 of the 1933 Securities Act, 15 U.S.C. S 77k(f), and were liable to Cendant for contribution under Section 11(f) for monies to be paid out in the settlement. On April 14, 2000, the District Court denied summary judgment, holding that Deutch's motion for summary judgment was not ripe for consideration because any right to contribution is inchoate until after settlement has been approved and Cendant has paid more than its fair share of the settlement. See In re Cendant Corp. Derivative Action Litig., 96 F. Supp. 2d 394, 397 (D.N.J. 2000). The court also noted that Deutch's derivative action complaint did not include any allegations pertaining to Cendant's decision to settle or the structure of the settlement. See id. at 399. The court later imposed Rule 11 sanctions on Deutch's attorney for improperly moving for summary judgment. See In re Cendant Corp. Derivative Action Litig., 96 F. Supp. 2d 403 (D.N.J. 2000). That action remains pending.

attributable to Section 11 claims, which was critical for determining the value of the contribution claims that will remain if the settlement is approved;

(4) The settlement constituted an illegal indemnification of individual officers and directors of Cendant, CUC, and HFS;

(5) The Notice of Settlement was defective because it did not inform current Cendant shareholders that certain derivative claims would be compromised and that contribution claims by Cendant against the HFS defendants would be barred.

On June 28, 2000, the District Court conducted a fairness hearing at which the objectors were given an opportunity to be heard. On August 15, 2000, the District Court issued two opinions rejecting the objections and approving the Cendant and E&Y settlements and the Plan of Allocation. See In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 235 (D.N.J. 2000) (rejecting the class members' objections); In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 273 (D.N.J. 2000) (rejecting Deutch's objections).

In the corresponding judgment approving the Cendant settlement, the court ordered that "[a]ll actions and claims for contribution are permanently barred, enjoined and finally discharged (i) as provided by 15 U.S.C.S 78u–4(f)(7)(A), and (ii) as may be provided by applicable federal or state statutes or common law." App. at 16. Moreover, the court noted that "this Judgment shall not be deemed a waiver or release of and shall not preclude Cendant . . . from asserting any claims . . . against E&Y, its present or former officers, directors, partners and employees, or against any current or former officers or directors of CUC, HFS or Cendant, either in the form of a cross-claim, counterclaim, third-party complaint, or other form." App. at 16.

Deutch filed a timely appeal. On appeal, he makes the following arguments:

(1) The District Court erred by refusing to consider whether the settlement was fair to Cendant, where the corporation was effectively unrepresented in connection

11

with the settlement because its board of directors faced personal liability in the class action and therefore operated under a conflict of interest;

(2) The District Court erred by entering a contribution bar order in favor of the HFS Individual Defendants without first determining whether their payment into the settlement was sufficient to extinguish their liability;

(3) The District Court failed to analyze the fairness or adequacy of the HFS Defendants' settlement separately in order to ensure that the settlement did not impair the rights of Cendant, which will lose valuable contribution rights;

(4) The District Court erred by denying Deutch's motion to intervene as of right under Fed. R. Civ. P. 24(a) in order to protect Cendant's and its current shareholders' rights to contribution;

(5) The District Court erred by approving the Notice of Settlement which failed to notify current Cendant shareholders that Cendant's contribution claims were being abrogated under the settlement;

(6) The District Court allowed Cendant to assume the bulk of the settlement payment, thereby permitting an illegal indemnification of individual defendants for the substantial federal securities law claims pending against them;

(7) The District Court failed to determine what portion of the settlement was attributable to Section 11 of the 1933 Securities Act, 15 U.S.C. S 77k.

II.

DISCUSSION

A. Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. S 1291. We will uphold a district court's approval of a class action settlement unless there has been an abuse of discretion.

12

See In re General Motors Corp. Pick-Up Truck Fuel Tank
Prod. Liability Litig., 55 F.3d 768, 782-83 (3d Cir. 1995)
(hereafter In re GM Trucks).

B. Relevance of Settlement's Fairness, Reasonableness,
      and Adequacy to Cendant

Deutch's principal objection to the settlement is that the
District Court evaluated it without considering Cendant's
interests. Deutch contends that the District Court was
required by Fed. R. Civ. P. 23(e) to consider the settlement's
fairness, reasonableness, and adequacy with regard to
Cendant because the majority of its board of directors
suffered a serious conflict of interest at the time the board
agreed to settle. He alleges that 13 of Cendant's 14 board
members at that time faced personal liability in the class
action, effectively making Cendant an unrepresented party
in the settlement.[6]

The District Court rejected Deutch's view of its
responsibility. It stated that Rule 23 "requires court
scrutiny of settlements to protect absent class member,"
and that "[t]he standard is whether the settlement is fair,
reasonable and adequate to the class." In re Cendant Corp.
Sec. Litig., 109 F. Supp. 2d at 280. The court noted that in
In re Prudential Ins. Co. of Am. Sales Practices Litig., 148
F.3d 283 (3d Cir. 1998), we stated that "Rule 23(e) imposes
on the trial judge the duty of protecting absentees, which is
executed by the court's assuring the settlement represents
adequate compensation for the release of the class claims."
Id. at 316 (quotation omitted). It cited other courts of
appeals' decisions that had taken a similar view. See, e.g.,
In re Jiffy Lube Sec. Litig., 927 F.2d 155, 159 (4th Cir.
1991) ("[F]or Rule 23(e) to be satisfied, the court must
determine only that sufficient compensation is being paid to
the class, without necessarily speculating as to the

_____

6. Deutch has not specified the individual defendants to whom he
referred but it appears, from the subsequent derivative action filed in
Delaware by his counsel on behalf of a different plaintiff, that they are
Henry Silverman, Martin Edelman, John Snodgrass, James Buckman,
Michael Monaco, Stephen Holmes, Brian Mulroney, Robert Nederlander,
Robert Pittman, Robert Smith, Leonard Coleman, Leonard Schutzman,
and Robert Schutzman.

13

appropriateness of the contributions of the various settling defendants."); In re Warner Comm. Sec. Litig. , 798 F.2d 35, 37 (2d Cir. 1986) ("If the total compensation to class members is fair, reasonable, and adequate, the court is not required to supervise how the defendants apportion liability for that compensation among themselves.").

The District Court declined to apply the "entire fairness" standard advocated by Deutch, which the court believed would require it to "substitute its judgment for the judgment of Cendant's board to determine whether the settlement is in the company's best interest." In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d at 280. Instead, it held that any claim that the Cendant settlement is unfair to Cendant and its current shareholders should be brought as a derivative action under Delaware corporate law. See id.

Deutch argues that our decision in Eichenholtz v. Brennan, 52 F.3d 478 (3d Cir. 1995), requires consideration of the interests of persons other than class members. Eichenholtz involved a securities fraud class action brought against International Thoroughbred Breeders ("ITB"), individual members of ITB's Board of Directors, and three registered brokers. ITB and the individual board members negotiated a settlement with the class, which contained a provision that would prevent the non-settling defendants from commencing any claim for contribution or indemnity against the settling defendants. The non-settling defendants appealed from the district court's approval of the settlement as being fair, reasonable, and adequate to the class and ITB.

In our opinion on appeal, we stated that "[w]here the rights of third parties are affected, it is not enough to evaluate the fairness of the settlement to the settling parties; the interests of such third parties must be considered." Id. at 482. That is the language on which Deutch relies, but he takes it out of context. In response to the argument by the settling parties that the non-settling defendants had no standing, we held that the non-settling defendants did have standing to object because they claimed to have "suffered a cognizable prejudice by the approval of the partial settlement." Id. at 483. We ultimately held that the non-settling defendants would not be

14

prejudiced because they would be responsible only for their portion of the liability. See id. at 487. Therefore we affirmed the district court's approval of the partial settlement.

Cendant does not stand in the position of a non-settling defendant or an unrepresented third party whose rights are affected by the settlement. Quite the contrary. Cendant is a settling defendant. Therefore, Eichenholtz does not control our disposition of this case.

Deutch also cites to Judge Newman's concurrence in In re Warner Comm. Sec. Litig., 798 F.2d 35, 37 (2d Cir. 1986). In that case, a class member who still owned stock in Warner Communications, Inc. sought to overturn the district court's approval of a securities fraud class action settlement against Warner, one of its subsidiaries, and certain of their officers and directors. The class member argued, much like Deutch argues now, that the district court should have compelled a greater contribution from the individual defendants. The Court of Appeals for the Second Circuit affirmed the district court's approval of the settlement after noting that the district court's fiduciary duties covered the class members and not the defendants. See id. at 37.

In a separate concurring opinion, Judge Newman agreed with the majority that "normally, once a district court is satisfied that the total compensation paid to class members in settlement of a class action is fair and reasonable, the court need not be concerned as to how the defendants apportion liability for the settlement among themselves." Id. at 38 (Newman, J., concurring). He then noted:

> [I]n a case such as this, where the apportionment between corporate and individual defendants can have economic significance for a shareholder-claimant, some scrutiny of the portion contributed by a corporate defendant normally would be appropriate. In such circumstances, a settlement might well be shown to be unreasonable to a shareholder if the corporate defendant contributed so much more than a fair share as to cause a discernable incremental pro rata decline in the value of the shareholder's stock below the reduction attributable to a fair contribution.

15

Id. Judge Newman's view apparently did not convince his colleagues but he ultimately concurred with the judgment of the majority because the Delaware Court of Chancery had already determined in a derivative action that the allocation of the settlement's burdens between the corporation and the individual defendants was fair. See id.

To the extent that Judge Newman's view was that the fairness of the allocation between the corporation and other defendants is an issue to be considered in a derivative action, we agree. Deutch's allegations that Cendant was unrepresented in the settlement negotiations because a majority of its board of directors operated under a conflict of interest and that Cendant's board members breached their duty of loyalty are best made in a shareholder derivative action. See, e.g., Wolf v. Barkes, 348 F.2d 994, 996 (2d Cir. 1965) ("A new derivative suit against management for fraud or waste in releasing corporate claims for inadequate payment can redress improper settlements even without setting them aside."); In re Warner Comm. Sec. Litig., 618 F. Supp. 735, 753 (S.D.N.Y. 1985) ("If [the objector] believes that the settlement is unfair to Warner he should pursue his objection in the Delaware Chancery Court . . . . This Court is concerned solely with the fairness of the settlement to the class."), aff'd, 798 F.2d 35 (2d Cir. 1986) (noting that the Delaware Chancery Court had already resolved the issue of apportionment of the burdens of the settlement between the corporations and their officers).

Significantly, counsel for Cendant informed us at oral argument that the same counsel for Deutch in this appeal has commenced a derivative action in Delaware Chancery Court on behalf of a different Cendant shareholder. That action, entitled Resnik v. Silverman et al., Civ. A. No. 18329 (Del. Ch. filed Sept. 19, 2000), includes the allegation that 13 of the HFS Individual Defendants breached their duties of loyalty and good faith by causing Cendant to obtain releases of their personal liability when settling the class action. Thus, the derivative action plaintiff will have an opportunity to make the same argument that Deutch is trying to make here.

16

In so holding, we are not convinced by Deutch's contentions that the state law derivative action will be inadequate to protect Cendant's rights. Deutch asserts that a derivative action is not the functional equivalent of a contribution claim, but, as his counsel conceded at oral argument, the alleged damages in the derivative action are similar to those in a contribution claim.

Deutch also argues that a state law derivative action plaintiff will face significant roadblocks to Cendant's recovery from the directors for their fair share of liability. He first notes that a derivative action plaintiff will have to satisfy the demand requirement. See Aronson v. Lewis, 473 A.2d 805, 811-12 (Del. 1984) (recognizing that the demand requirement "exists at the threshold, first to insure that a stockholder exhaust his intracorporate remedies, and then to provide a safeguard against strike suits"). This is a generally applicable requirement for any derivative action and does not make the derivative action inadequate. Next, Deutch complains that Delaware law allows Cendant's officers and directors to seek indemnification. If so, that reflects the policy of the state corporation law but does not provide a basis for objection by current shareholders to a class action settlement.

We believe that the District Court correctly identified the applicable law – under Fed. R. Civ. P. 23(e), courts must determine whether the settlement is fair, reasonable, and adequate to the class. The fiduciary duty to the class exists because the very nature of the class action device prevents many who have claims from directly participating in the litigation process. See In re GM Trucks, 55 F.3d at 805 ("Rule 23(e) imposes on the trial judge the duty of protecting absentees."); see also 2 Herbert Newberg & Alba Conte, Newberg on Class Actions S 11.46, at 11-105 to 11-106 (3d ed. 1992) ("The court must be assured that the settlement secures an adequate advantage for the class in return for the surrender of litigation rights against the defendants."). Deutch has not persuaded us that the court's fiduciary duty under Rule 23(e) should be extended to include defendant corporations even if they may be controlled by individuals who have conflicts of interest.

17

Deutch has made several other arguments that require little discussion. He argues that the Notice of Settlement was deficient because it failed to inform current Cendant shareholders that the settlement would eliminate Cendant's rights to contribution. However, Deutch fails to show that current Cendant shareholders who were not part of the class should have been notified of the settlement. Rule 23(e) requires only that "notice of the proposed dismissal or compromise [of the class action] shall be given to all members of the class." Because there is no requirement imposed by Rule 23(e) or our case law to inform current shareholders of corporate defendants of the settlement or the allocation, we reject Deutch's objection to the Notice of Settlement.

Deutch also argues that the District Court erred by denying his motion to intervene as of right, because he had a right to intervene as a derivative action plaintiff to protect Cendant's rights to contribution.7 Under Fed. R. Civ. P. 24(a), an applicant can intervene as of right "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Inasmuch as we have declined to hold that Cendant was unrepresented in the settlement negotiations, we see no reason why Deutch is entitled to intervene in order to object to the settlement on behalf of Cendant. As we noted above, the proper forum for Deutch's allegations is a derivative

_____

7. In addition, Deutch argued before the District Court that he could intervene as of right in order to protect his interest as a current Cendant
shareholder. The District Court rejected this argument, stating that the logical result would be that a corporation could not settle any lawsuit against it without first obtaining the approval of every shareholder. See In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d at 277. Although Deutch listed this issue in his statement of issues on appeal, he did not argue the point in his brief and therefore we will not consider it. See Travitz v.
Northeast Dep't ILGWU Health & Welfare Fund, 13 F.3d 704, 711 (3d Cir. 1994) ("When an issue is not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal.").

18

action against Cendant's board members for breach of fiduciary duties. Therefore, the District Court did not err in denying Deutch's motion to intervene as of right in the class action and granting him only permissive intervention under Rule 24(b).

C. Allocation of the Burdens of Settlement

Deutch's remaining contentions stem primarily from his belief that Cendant may have paid more than its fair share of the settlement to the benefit of the HFS Individual Defendants. He argues first that the District Court should not have released the HFS Individual Defendants from certain contribution claims that could have been brought by Cendant without first determining whether the HFS Individual Defendants paid their fair share into the settlement.

The District Court's order approving the settlement provides that "[a]ll actions and claims for contribution are permanently barred, enjoined and finally discharged (i) as provided by 15 U.S.C. S 78u-4(f)(7)(A), and (ii) as may be provided by applicable federal or state statutes or common law." App. at 16. The court added that "this Judgment shall not be deemed a waiver or release of and shall not preclude Cendant . . . from asserting any claims . . . against E&Y, its present or former officers, directors, partners and employees, or against any current or former officers or directors of CUC, HFS or Cendant, either in the form of a cross-claim, counterclaim, third-party complaint, or other form." App. at 16.

In entering the contribution bar, the District Court believed itself bound by the settlement discharge provision of the Reform Act which provides:

> A covered person who settles any private action at any time before final verdict or judgment shall be discharged from all claims for contribution brought by other persons. Upon entry of the settlement by the court, the court shall enter a bar order constituting the final discharge of all obligations to the plaintiff of the settling covered person arising out of the action. The order shall bar all future claims for contribution arising out of the action –

19

> (i) by any person against the settling covered person; and
>
> (ii) by the settling covered person against any person, other than a person whose liability has been extinguished by the settlement of the settling covered person.

15 U.S.C. S 78u-4(f)(7)(A).

Deutch reads the language of subsection (ii) to mean that "only a person who has paid to extinguish his own liability - i.e., one whose liability is not extinguished by the payment of another - is entitled to a contribution bar." Br. of Appellant at 32. In his view, because the HFS Individual Defendants have not paid their fair share into the settlement, they are not entitled to a contribution bar but rather are liable for contribution claims from Cendant.

We acknowledge at the outset that there is some question as to the scope of the contribution bar imposed by the District Court. The District Court's order does not identify by name those parties who are covered by the contribution bar. However, in its opinion denying Deutch's motion to intervene as of right the court stated, "[a]ll parties concede that the HFS Individual Defendants are covered by the contribution bar for Section 10(b) claims and outside HFS defendant-directors for Section 11 claims as well. Disputed is the impact of the bar on the CUC Individual Defendants who arguably are not parties to settlement but whose liability to the plaintiff class is extinguished by the settlement as structured." In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d at 277 n.4.

The issue of the contribution bar is raised by Deutch because he argues that the District Court erred in imposing a contribution bar in favor of the HFS Individual Defendants without first determining if they had paid their fair share into the settlement. However, we believe this is an inappropriate time to flesh out the various uncertainties with respect to the scope of the contribution bar. Because no party has yet filed a claim for contribution, the District Court was not required to decide the issue raised here by Deutch.

20

It is not necessary to determine who is covered by the contribution bar in order to address Deutch's argument that the District Court should have determined if the HFS Individual Defendants paid their fair share into the settlement before imposing a contribution bar in their favor. Nothing in the text of 15 U.S.C. S 78u-4(f)(7)(A) or in the legislative history of the Reform Act suggests that there is such a requirement, see H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730; S. Rep. No. 104-98 (1995), reprinted in 1995 U.S.C.C.A.N. 679, and we decline to impose one in this case.

Deutch argues that such a requirement is supported by the Reform Act's policy of favoring proportionate liability among wrongdoers. The proportionate liability provisions of the Reform Act do not support Deutch's argument, as they merely state that "a covered person against whom a final judgment is entered in a private action shall be liable solely for the portion of the judgment that corresponds to the percentage of responsibility of that covered person." 15 U.S.C. S 78u-4(f)(2)(B)(i).8 Thus, when there is a final judgment in an action where other defendants have previously settled, i.e., a partial settlement,"the verdict or judgment shall be reduced by the greater of – (i) an amount that corresponds to the percentage of responsibility of that [settling] covered person; or (ii) the amount paid to the

_____

8. The Act further provides:

> In any private action, the court shall instruct the jury to answer
> special interrogatories, or if there is no jury, shall make findings,
> with respect to each covered person and each of the other persons
> claim by any of the parties to have caused or contributed to the loss
> incurred by the plaintiff, including persons who have entered into
> settlements with the plaintiff or plaintiffs, concerning–
>
> (i) whether such person violated the securities laws;
>
> (ii) the percentage of responsibility of such person, measured as a
> percentage of the total fault of all persons who caused or
> contributed to the loss incurred by the plaintiff; and
>
> (iii) whether such person knowingly committed a violation of the
> securities laws.

15 U.S.C. S 78u-4(f)(3)(A).

plaintiff by that [settling] covered person." 15 U.S.C. S 78u–4(f)(7)(B). Such a reduction is appropriate because non–settling defendants would otherwise be prejudiced if they were held fully liable for the entire amount of the verdict or judgment. The situation before us is different because there has been a full settlement of claims.

Two of the cases on which Deutch relies, Eichenholtz v. Brennan, 52 F.3d 478 (3d Cir. 1995), and TBG, Inc. v. Bendis, 36 F.3d 916 (10th Cir. 1994), both involved partial settlements in which non-settling defendants would have been prejudiced if proportionate fault had not been determined. However, neither Eichenholtz nor TBG discusses the situation where the parties have negotiated a full settlement of claims, and where the rationale behind proportionate fault reduction in partial settlements (avoiding prejudice to non-settling defendants) is inapplicable. Indeed, one of the benefits of a full settlement is the avoidance of a determination of the merits. See, e.g., Young v. Katz, 447 F.2d 431 (5th Cir. 1971) ("In examining a proposed compromise for approval or disapproval under Fed. R. Civ. P. 23(c) the court does not try the case. The very purpose of compromise is to avoid the delay and expense of such a trial.") (quotation omitted). Moreover, both Eichenholtz and TBG were decided before the applicable date of the Reform Act.

Inapplicable here for the same reasons are United States v. Alcan Aluminum, Inc., 25 F.3d 1174 (3d Cir. 1994), and Herbst v. International Tel. & Tel. Corp., 72 F.R.D. 85 (D. Conn. 1976), where releases of contribution claims were negotiated by the parties. That the Reform Act significantly changed the law of securities fraud since Herbst  and the other cases on which Deutch relies cannot be gainsaid. We therefore find no support for Deutch's position in the cases he cites.

The District Court's order approving the settlement takes great care in preserving to Cendant any claims "against any current or former officers or directors of CUC, HFS or Cendant, either in the form of a cross-claim, counterclaim, third party complaint, or other form." App. at 16. Thus, the settlement itself should not prejudice a derivative action plaintiff, and the District Court did not err in rejecting

22

Deutch's claim that the court should not impose a contribution bar in favor of the HFS Individual Defendants without first determining if they have paid their fair share into the settlement.

Deutch relies on language in our decision in Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975)9 to support his contention that the District Court was required to analyze the value of the contribution of the HFS Individual Defendants. The language to which Deutch refers 10 was directed to our concern that the district court had approved a class action settlement without providing an adequate record that would enable us to fulfill our review function.

Unlike the situation in Girsh, there was no deficiency in the record in this case. The District Court considered the nine Girsh factors before finding the Cendant settlement to be fair, reasonable, and adequate. The court recognized that questions had been raised about the value of the HFS Individual Defendants' contribution and noted that "the HFS Defendants have agreed to contribute to the class 50%

_____

9. In Girsh, we set forth nine factors that should be considered in connection with a class action settlement's fairness, reasonableness, and adequacy. The nine Girsh factors are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater
judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. See id. at 156–57.
10. We noted:

    The district court did not specifically deal with the Gluck settlement
    and we are, therefore, at a loss and without the benefit of its
    analysis as to why $10,000.00 was a fair and adequate settlement
    of all claims against defendant Gluck. It may be that the $10,000.00
    contribution is overly generous. On the other hand, it may be
    grossly inadequate. The determination as to the fairness of this
    aspect of the settlement must depend upon facts still to be
    developed.

Id. at 159 (emphasis in original).

23

of any recovery against E & Y." In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d at 284. In its opinion rejecting the objections of the class members, the District Court stated: "The Court recognizes that this recovery is inchoate but once again affirms that it is not `illusory.' This does not mean that valuation is impossible, but only difficult." In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d at 256. As Deutch notes, the court stated that it need not consider the "added value from recovery against E & Y" before it held that the Cendant settlement was fair, reasonable, and adequate. Id. This did not amount to an abuse of the court's discretion.

Deutch further argues that the HFS Individual Defendants' promise to give 50% of their recovery against E&Y to the class was illusory. He states that "the settlement creates no obligation for the HFS Defendants to prosecute the suit after the settlement is final or to guarantee some minimum amount commensurate with their liability – even though the other parties have fully complied with their obligations." Br. of Appellant at 44.

However, implicit in the settlement is a promise to make a good faith effort to seek recovery against E&Y. See Russell v. Princeton Labs., Inc., 50 N.J. 30, 38, 231 A.2d 800, 805 (1967) ("A contract should not be read to vest a party . . . with the power virtually to make his promise illusory."); Nolan v. Control Data Corp., 243 N.J. Super. 420, 431, 579 A.2d 1252, 1258 App. Div. (1990) (implying a good faith requirement because a "[l]iteral interpretation of these clauses would go far towards making these contracts illusory, a result which courts usually seek to avoid"); 2 Joseph M. Perillo & Helen Hadjiyannakis Bender, Corbin on Contracts S 5.28, at 149–50 (rev. ed. 1995) ("An implied obligation to use good faith is enough to avoid the finding of an illusory promise.").11

Deutch also argues that the District Court was required, but failed, to determine the amount paid into the
_____

11. We note that Cendant and the HFS Individual Defendants subsequently did file cross–claims against E&Y and were for the most part successful in overcoming E&Y's motion to dismiss. See In re Cendant Corp. Sec. Litig., 139 F. Supp. 2d 585 (D.N.J. 2001).

settlement to release the claims brought under Section 11 of the 1933 Securities Act, 15 U.S.C. S 77k(f). He contends that this determination was necessary because the contribution bar mandated by 15 U.S.C. S 78u-4(f) cannot bar "contribution claims for S 11 violations against inside directors . . . under any circumstance." Reply Br. of Appellant at 16.12

Once again, we conclude that whether, and to what extent, the HFS Individual Defendants are covered under the contribution bar is better presented in a contribution claim, if any, brought by Cendant, E&Y, or the CUC Individual Defendants against those defendants. We need only hold that the District Court was not required under the Reform Act or Rule 23(e) to apportion the settlement according to the plethora of claims raised in the class action. See, e.g., Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977) ("It cannot be overemphasized that neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of the fact and law which underlie the merits of the dispute.") (quotation omitted).

Finally, Deutch argues that because Cendant is paying the entire cash amount of the settlement, it constitutes an impermissible indemnification of the HFS Individual Defendants for securities law violations. Deutch again cites to Eichenholtz, 52 F.3d at 483, where we held that there was no express or implied right to indemnification under the federal securities laws and recognized that "federal courts disallow claims for indemnification because such claims run counter to the policies underlying the federal securities acts." Id. at 484.

Ordinarily, indemnification refers to the reimbursement by a corporation to its directors and officers for liabilities

_____

12. Deutch apparently refers to 15 U.S.C. S 78u-4(f)(10), which defines "covered person" as "(i) a defendant in any private action arising under this chapter [i.e., Section 10(b) claims]; or (ii) a defendant in any private action arising under section 77k of this title [i.e., Section 11 claims], who is an outside director of the issuer of the securities that are the subject of the action."

incurred in connection with actions brought against them in their official capacities. See, e.g., Kirschbaum v. WRGSB Associates, 243 F.3d 145, 156 (3d Cir. 2001). Cendant has not reimbursed the HFS Individual Defendants, all of whom were directors and/or officers of Cendant at some point during the class period. Instead, the settlement provides for Cendant to make a direct payment to the class of $2.85 billion. Deutch has not cited to any case in which a court has determined that a full settlement of claims amounted to an indemnification of certain defendants. Therefore, we decline to hold that the settlement between Cendant, the HFS Individual Defendants, and the Lead Plaintiff amounted to an indemnification of the HFS Individual Defendants.

III.

CONCLUSION

Deutch has not convinced us that his objections to the settlement are supported by the applicable law, nor has he persuaded us that new rules are required for a derivative action plaintiff. Whether Cendant's board members breached their fiduciary duties to the corporation is best addressed in a derivative action, and not in connection with approval of a class action settlement. The District Court was not required by Rule 23 or the Reform Act to consider the effect of the settlement on Cendant nor was it required to determine the relative fault of the defendants before approving the settlement. Therefore, we hold that the District Court did not abuse its discretion in rejecting Deutch's objections to the settlement.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

26