

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-21-2002

# In Re Cendant Corp

Precedential or Non-Precedential: Precedential

Docket No. 01-3656

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"In Re Cendant Corp " (2002). *2002 Decisions.* Paper 759.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/759

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed November 21, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3656

IN RE: CENDANT CORPORATION PRIDES LITIGATION
WELCH & FORBES INC., an institutional
investment manager, individually and on
behalf of all others similarly situated

v.

CENDANT CORPORATION; MERRILL LYNCH & CO.;
CHASE SECURITIES, INC.; HENRY R. SILVERMAN;
WALTER A. FORBES; COSMO CORIGLIANO; E. KIRK
SHELTON; ERNST & YOUNG

THE CHASE MANHATTAN BANK, as custodian
for Capital Income Builder, Inc.;
INCOME FUND OF AMERICA, INC. and
CAPITAL WORLD GROWTH & INCOME, INC.,
        Appellants

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. No. 98-cv-02819)
District Judge: Honorable William H. Walls

Argued: September 9, 2002

Before: NYGAARD, ROTH, and WEIS, Circuit Judge s.

Filed November 21, 2002


        Gerald T. Ford, Esquire (ARGUED)
        Robert A. Kasuba, Esquire
        Landman Corsi Ballaine & Ford
        One Gateway Center, Suite 400
        Newark, New Jersey 07102

        Attorneys for Appellant
        The Chase Manhattan Bank, now
        known as J. P. Morgan Chase Bank

        Michael M. Rosenbaum, Esquire
         (ARGUED)
        William M. D'Annunzio, Esquire
        Budd Larner Gross Rosenbaum
         Greenberg & Sade
        150 John F. Kennedy Parkway
        Short Hills, New Jersey 07078-0999

        Attorneys for Appellee

Cendant Corporation

OPINION OF THE COURT

WEIS, Circuit Judge.

We remanded this case to the District Court for determination of whether Chase National Manhattan Bank ("Chase"), as custodian, had established excusable neglect for late filing of documents confirming its right to participate in the distribution of a fund created to settle a class action. In re Cendant Corp. Prides Litig. , 234 F.3d 166 (3d Cir. 2000) ("Chase I"). After reconsideration, the District Court adhered to its previous ruling rejecting the applicability of excusable neglect. We will reverse and remand with directions to allow the claims.

The case is based on Securities Act violations with respect to Cendant Corporation's convertible securities called "Prides." As we observed in one of the numerous opinions in this complex litigation,1 "it is basically

_____

1. See In re Cendant Corp. Prides Litig., 233 F.3d 188 (3d Cir. 2000); In re Cendant Corp. Prides Litig., 234 F.3d 166 (3d Cir. 2000) ("Chase I");

2

undisputed that Cendant's employees committed fraud." In re Cendant Corp. Litig., 264 F.3d 201, 249 (3d Cir. 2001).

Chase I reviewed the issues here in some detail, but we will only summarize the principal points that are relevant to this appeal. Chase, custodian for three mutual funds - Capital Income Builder, Inc., Income Fund of America, Inc., and Capital World Growth and Income, Inc. - timely filed proofs of claim for each entity against the settlement fund of $341,480,861. Capital Income's claim was $4,684,000; Income Fund, $16,394,000; and World Growth, $2,576,200.

At the request of Valley Forge Administrative Services, the claims administrator, Chase provided additional information in August 1999 with respect to Income Fund and World Growth. Although the cures were eight days late, Valley Forge approved them. No information was supplied, however, in connection with the Capital Income claim, and Valley Forge rejected it on August 17, 1999.

In September 1999, Cendant moved to dismiss all late cured claims, including Income Fund and World Growth. In October 1999, the District Court granted a four day extension of the deadline for curing claims as originally set, but stated that it would accept no excuses for tardiness that were filed with the Court after September 7, 1999.

In January 2000, the District Court rejected the Income Fund and World Growth claims because they had failed to file excuses for their untimely filing of cures. In April 2000,

Chase, invoking Federal Rule of Civil Procedure 60(b), sought allowance of all three claims, including that of

---

In re Cendant Corp. Prides Litig., 235 F.3d 176 (3d Cir. 2000) ("Santander"); In re Cendant Corp. Prides Litig., 243 F.3d 722 (3d Cir. 2001); In re Cendant Corp., 260 F.3d 183 (3d Cir. 2001); In re Cendant Corp. Litig., 264 F.3d 201 (3d Cir. 2001); In re Cendant Corp. Litig., 264 F.3d 286 (3d Cir. 2001); In re Cendant Corp. Prides Litig., 51 F. Supp.2d 537 (D.N.J. 1999); In re Cendant Corp. Prides Litig., 189 F.R.D. 321 (D.N.J. 1999); In re Cendant Corp. Litig., 60 F. Supp.2d 354 (D.N.J. 1999); In re Cendant Corp. Prides Litig., 98 F. Supp.2d 602 (D.N.J. 2000); In re Cendant Corp. Prides Litig., 157 F. Supp.2d 376 (D.N.J. 2001).

Capital Income. The District Court denied the request and Chase appealed. We concluded that the District Court had failed to consider matters that might have constituted a basis for establishing excusable neglect and remanded for further proceedings.

In accordance with our instructions, the District Court reconsidered Chase's Rule 60(b) motion. After permitting limited discovery and hearing oral argument, the Court again denied the motion. Chase has appealed.

As Chase I made clear, the proper standard to be applied in determining whether tardy claims were entitled to share in the settlement proceeds is "excusable neglect." Chase I, 234 F.3d at 168 n.2. The inquiry, essentially equitable, requires consideration of the entire situation. Pioneer Inv. Servs. v. Brunswick Assoc., Ltd. P'ship, 507 U.S. 380, 395 (1993). Pioneer set out four factors to be considered: (1) prejudice to the adverse party; (2) length of the delay and its potential impact on the judicial proceedings; (3) reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. Id.

With these general principles as the backdrop, we will review the District Court's rulings on remand as to the respective claims under the abuse of discretion standard. Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002). Because of a difference in material facts, we will discuss the Capital Income claim after we have first considered the other two.

I.

Many of the surrounding matters are in dispute, but the controlling circumstances with respect to Income Fund and World Growth are definitive enough to reach a conclusion on the proper disposition. The crucial chronology follows. Valley Forge sent separate letters dated July 15, 1999 to Income Fund and World Growth and a duplicate one to Income Fund dated July 16, 1999. The letters requested further information about the previously submitted proofs

of claim. Chase responded by fax on August 12, 1999,

although this was four-days late as per the terms of the settlement agreement and court order.2

The District Court found that after receiving the faxed responses, Valley Forge approved those two claims. This finding appears to be based on the unchallenged affidavit submitted by Ms. Collins, a Chase employee who telephoned Valley Forge after sending the fax on August 12, 1999. She averred that she was told that the Income Fund and World Growth claims were now in order. She had also given Chase's fax and telephone numbers to Valley Forge on that occasion.

Substantial dispute exists with respect to two other mailings allegedly sent by Valley Forge. One letter dated August 5, 1999 reminded Chase of the necessity for information to cure the proofs of claim. Two form letters, dated August 27, 1999 and addressed to "Claimant" rather than Chase, stated that the cures were late, but that Valley Forge and class counsel nevertheless believed the claims should be accepted as valid. However, the letters urged the "Claimant" to write to the court explaining why the cures were tardy.

The District Court, relying on the presumption of mailing and delivery, found that the notices of August 27, 1999 had been received, despite Chase's denial of receipt. Finding that Cendant had not been prejudiced and Chase's Rule 60(b) motion had been brought within a reasonable time, the Court, however, refused to modify its January 14, 2000 order denying the Income Fund and World Growth claims.

The parties devoted much of their argument before the District Court on remand and on this appeal discussing whether the August 27, 1999 "Claimant" letters had been received by Chase. We conclude, however, that that issue is a distraction and is not material to a determination of whether the delay in filing Income Fund and World Growth cures falls within the ambit of excusable neglect. 3

_____

2. Actually, it was eight-days late, but the District Court's grant of a four-day grace period for all cured claims reduced the tardy factor for the Income Fund and World Growth to four days.

3. In our prior opinion we commented that the letters of August 27, 1999 were "critical." Chase I, 234 F.3d at 173. However, the District Court had

As stated in Chase I, Cendant could not establish prejudice. The District Court had earlier reached that same conclusion in granting the four-day grace period for filing the cures, explaining that the "limits of Cendant's

bargained--for financial obligations, $341,480,861, have not been expanded." In re Cendant Corp. Prides Litig., 189 F.R.D. at 321, 325 (D.N.J. 1999). We agreed that,". . . the only 'prejudice' Cendant would suffer by being forced to pay Chase is the 'loss of a windfall.' " Chase I, 234 F.3d 171 n.8.

On remand, the District Court also concluded that Chase's delay in filing its Rule 60(b) motion was reasonable and had no actual negative impact on the judicial proceedings. Notwithstanding the findings favorable to Chase, the judge criticized it for lack of diligence following disallowance of the Income Fund and World Growth claims in the January 14, 2000 order and further commented that Chase's conduct indicated a lack of good faith in the claims process.

In its defense, Chase pointed out that Cendant's motion in September 1999 to disallow these two claims along with those of other parties was served on only class counsel who failed to notify the claimants. Moreover, in a brief submitted in response to Cendant's motion, class counsel had suggested that all late cures, including Chase's, be considered timely if filed by August 17, 1999.

In response to the District Court's limitation of excuses to those submitted before September 7, 1999, class counsel filed a brief that listed extenuating circumstances for some claimants, but proffered nothing with respect to Income Fund and World Growth.

Although Chase's lack of diligence in following the progress of the Court's proceedings is far from commendable, it did not amount to a lack of good faith.

_____

not mentioned the August 12th fax cures in its opinion of June 7, 2000 (the subject of Chase I). Nor did it acknowledge that Valley Forge had approved the cures. Consequently, Chase I did not discuss whether the District Court could have considered that Valley Forge's approval made it unnecessary for Income Fund or World Growth to file excuses.

6

Certainly, Chase could assume that during the period in question, class counsel was looking after the interests of the Funds as well as the other class members.

But most critical on remand was the District Court's failure to consider the length of the delay in sending the cure information to Valley Forge -- four days. As we commented in a companion case, "we agree with the Prides Class that the District Court need not have scrutinized claims meeting that extended date [September 7, 1999] with the same exactitude as those claims missing even that deadline." In re Cendant Corp. Prides Litig. , 233 F.3d 188, 197 (3d Cir. 2000). In another Prides case, In re Cendant Corp. Prides Litig., 235 F.3d 176 (3d Cir. 2000) ("Santander"), we characterized the delay of five days, or

three business days, in filing the initial proof of claim by another claimant in this same litigation as "trivial."

In the case now before us, we conclude that the four-day delay in filing the cures by Income Fund and World Growth was trivial as well. Indeed, the justification for imposing unyielding time limits on perfecting a cure is even less obvious than that for filing a proof of claim. In view of the insignificant time lapse of only four days, and the assurance given by Valley Forge that the claims were in order, it would not be unreasonable for Chase to have assumed that there was no need to submit an excuse to the Court -- even if the August 27, 1999 form letter had been received.

Given these circumstances, and recognizing the equitable nature of the proceeding, we are persuaded that the record demonstrates the existence of excusable neglect. Thus, the District Court's denial of the Income Fund and World Growth claims did not constitute the exercise of sound judicial discretion. Accordingly, those claims should be allowed.

II.

Although the proof of claim for Capital Income was filed at the same time as those for Income Fund and World Growth, the chronology of significant events thereafter varies substantially.

7

Cendant contends that Valley Forge sent a notice dated July 19, 1999 to Chase as custodian for Capital Income requesting additional information. Like all of the others, it was addressed to "Chase Manhattan as TTEE, P.O. Box 1508 Church St. Station, New York, N.Y. 10008." Chase, however, asserts that it never received that letter. On August 5, 1999, Valley Forge mailed letters to Chase's post office box again requesting cure information on each of the three funds, including Capital Income. Those letters did reach Chase, but they were date-stamped as being received in Chase's Class Action Group on November 15, 1999. That date-stamp does not establish, however, when the letter actually arrived at Chase's post office box.

Having received no response within a few weeks to its earlier letters, Valley Forge sent a third notice dated August 17, 1999 rejecting Capital Income's claim. Chase asserts it never received this letter and, thus, never knew of the denial. Because the Capital Income claim had been rejected by Valley Forge, it was not called to the attention of the District Court by class counsel in connection with Cendant's September 1999 motion to deny various claims.

Chase responded to the delayed letter of August 5, 1999 on January 4, 2000 by sending the requested data to Valley Forge. No explanation exists in the record for the time-lapse between November 15, 1999, when Chase's Class Action

Group received the August 5th notice, and January 4, 2000, when it sent the information to Valley Forge.

On January 17, 2000, class counsel wrote to Chase that the Court had denied the Income Fund and World Growth claims and suggested that because of a possible conflict of interest, separate counsel should be retained to appeal that ruling. Chase admits losing that letter. However, it has little bearing on the Capital Income issue because that claim had not been submitted to the Court, and therefore was not mentioned in the District Court's January 14, 2000 order.

In early April 2000, after Chase had requested information on its claims, class counsel sent a copy of its January 17th letter. After further investigation, Chase filed a motion under Rule 60(b) on April 24, 2000 seeking relief from the order denying its claims, including that of Capital Income.

8

In the remand proceedings, the District Court found that the July 18, 1999 and the August 5, 1999 letters requesting cure information from Capital Income, as well as that of August 17th which denied the claim, had been received by Chase. The Court relied on affidavits submitted by Valley Forge describing its mailing procedures.

The Court noted, but did not place much stock in Chase's contention that it was not unusual for mail addressed to Chase to be delayed ten to fifteen days by the Post Office. The Court criticized Chase's practice of using a central mailroom, which processed all incoming communications and employed a ten-step arrangement in distributing them internally. This arrangement required three days to transmit correspondence about class actions to the Class Action Group within the bank. Only after letters reached the Group were they date-stamped.

The Court concluded that Chase had lost the August 17, 1999, notice of disallowance because of its own fault in maintaining an inefficient internal mail distribution system. During the oral argument on the Rule 60(b) motion, the District Court expressed its irritation with Chase's internal mailroom system, commenting that "even under the Pony Express, delivery was better than that." The criticism was understandable and well-deserved.

The Court also questioned the delay between November 15, 1999, when the August 5, 1999 letter was concededly received, and January 4, 2000, when Chase finally answered on behalf of Capital Income and the other two funds. Finally, the Court explained that finding excusable neglect here would provide a disincentive for diligence on the part of claimants in future cases.

Despite Chase's denial that it had received the documents, the Court relied on the presumption that Valley Forge, having produced evidence of its mailing procedures,

had established a presumption of timely delivery. The common law has long recognized a presumption that an item properly mailed was received by the addressee. Hagner v. United States, 285 U.S. 427, 430 (1932) (citing Rosenthal v. Walker, 111 U.S. 185, 193 (1884)); United States v. Bowen, 414 F.2d 1268, 1272 (3d Cir. 1969).

The presumption arises upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail. Beck v. Somerset Technologies, Inc., 882 F.2d 993, 996 (5th Cir. 1989). To invoke the presumption, proof of procedures followed in "the regular course of operations" gives rise to a strong inference that it was properly addressed and mailed. Godfrey v. United States, 997 F.2d 335, 338 (7th Cir. 1993).

The mailing and timely receipt presumption is rebuttable, and at least one Court has held that testimony denying receipt suffices to rebut the presumption. See In re The Yoder Co., 758 F.2d 1114, 1118 (6th Cir. 1985). Although the presumption of mailing rests on the dependability of the U.S. Postal Service, human experience has shown that that reliance has not always been justified.

In this case, application of the presumption is troublesome. Valley Forge had to process approximately 8,000 claims under very tight time restraints. The record shows that Valley Forge sent a letter to Income Fund on July 15, 1999 and sent another identical one on the following day, July 16, 1999. This would seem to indicate some question by Valley Forge that it had included Income Fund in the mailing of the previous day. If its record keeping had been precise, there should have been no doubt.4

Chase's mailing room handled the bank's extensive correspondence and distributed the mail in a manner that almost guaranteed human error would creep in and result in mishandling. However, it is curious that Chase responded to two of the three requests to cure, but did nothing about the letter to Capital Income requesting the same information. One could reasonably assume that since Chase took pains to answer the two letters, it must have been inadvertence that led to its failure to do the same with the third -- if it had been received.

_____

4. According to Valley Forge, the second request pertaining to Income Fund was sent to "insure that this large institutional claimant would submit sufficient documentation for its claim." However, the later mailings evidenced no such concern even though the Chase claims were among the largest of those submitted.

Chase denied receipt of the August 17, 1999 rejection letter for Capital Income, but at the same time, did receive

denials for 145 other claims that concededly were invalid. It is quite possible that the Capital Income denial became mixed in with the other 145 rejections.

Apparently, recognizing the problem of supplying information to the proper persons in large organizations, Valley Forge, in addition to mailing the letters, faxed them to a number of Funds. Chase did not include a fax number with its proof of claim, but did supply it to Valley Forge before it sent the August 17, 1999 rejection letter. That particularly important communication not only notified Capital Income of the denial of its claim, but also advised that a petition could be filed with the Court asking for a reversal of the rejection.

We recognize that these troubling uncertainties were within the province of the District Court to resolve, but they nonetheless color other aspects of the case. For example, in Santander, 235 F.3d at 183, the District Court refused to excuse a late filing caused by delay in the claimant's mailing room, remarking that the reason was "internal to [Santander's] organization." We reversed, concluding that "a mailroom which [does] not operate as it should have in the ordinary conduct of business" is a mitigating factor in weighing the existence of excusable neglect. Id . at 183.

Santander also pointed out that in three other instances the District Court had accepted somewhat similar grounds for finding excusable neglect. Id. at 183 n.10. In one case, the mailroom was handled "contrary to custom" and in another there were problems with an internal mailroom procedure. Id.

In an earlier opinion, the district judge allowed a claim filed by Mellon Bank. In re Cendant Corp. Prides Litig., 98 F. Supp.2d at 606. In that case, Mellon had received four letters from Valley Forge between June 22, 1999 and August 17, 1999. Id. at 604. Mellon conceded that the clerk in charge deliberately did not respond and did nothing until he called Valley Forge in January 2000 to check on the status of the claim. Id. The District Court accepted Mellon's excuse that the delay had been caused by a severe bout of

depression suffered by the clerk in charge. Id . at 606. We have no quarrel with the Court's ruling in the Mellon matter, but fail to see a difference substantial enough to account for a contrary result in Chase's case.

Even assuming that Chase received the letters of July and August 1999, we point out that the delay between the due date of August 8, 1999 and January 4, 2000 when Valley Forge was given the requested data is not beyond the pale. In In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 130 (3d Cir. 1999), we observed that Pioneer teaches that delay should be considered in absolute terms, and that two months was not prohibitive. See also Chemetron Corp. v. Jones, 72 F.3d 341 (3d Cir. 1995) (claim two years late

could be excusable). In re Orthopaedic Bone Screw Products Liab. Litig., 246 F.3d 315 (3d Cir. 2001) (seven month delay held excusable).

We think the determining factor in arriving at a proper resolution in this equitable proceeding is Pioneer's admonition to consider the totality of the circumstances. Insistence upon meeting time limitations is important in the prompt disposition of litigation, and the record supports the District Court's view that Chase carelessly and inefficiently handled its serious responsibilities. However, given that Cendant was not prejudiced by the delay, and the Court not hindered in any substantial degree in its administration of the case, the issue is narrowed down to the fundamental question of whether the party that committed fraud should profit by the careless and inept conduct of the party having a legitimate claim. In the circumstances here, equity should, albeit with misgivings, tolerate negligence rather than reward fraud.

After careful consideration of all the factors, we conclude that the District Court chose the wrong path, and its ruling in favor of Cendant and against Capital Income does not represent a sound exercise of judicial discretion.

Accordingly, the order of the District Court will be reversed and the matter remanded for allowance of the claims of Capital Income Builder, Inc., Income Fund of America, Inc., and Capital World Growth and Income, Inc.

12

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

13